# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **HANNAH SABATA, et. al.,** | **Case No. 4:17-cv-03107** |
| **Plaintiffs,** | |
| **v.** | **RULE 26(F) REPORT** |
| **NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES; et. al.,** | |
| **Defendants.** | |

The following attorneys conferred to prepare the Report of Parties' Planning Conference for the above-captioned case:

**Robert McEwen, Counsel for Plaintiffs**
**Ken Smith, Counsel for Plaintiffs**
**Dave Lopez, Counsel for Defendants**
**Timothy Ertz, Counsel for Defendants**
**Jessica Forch, Counsel for Defendants**
**Kate O'Brien, Counsel for Defendants**

The parties discussed the case and jointly make the following report:[1]

## I.   INITIAL MATTERS:

A.   <u>Jurisdiction and Venue</u>:  The defendant

\_\_\_X\_\_\_ does

\_\_\_\_\_ does not

---

[1] Counsel are advised to use caution in filing this report as well as other documents so there is no disclosure of information required by the E-Government Act of 2002 to be kept non-public, such as addresses, phone numbers, social security numbers, etc. If such identifiers are required to be disclosed to opposing parties, you may wish to file redacted versions for the public court file and serve opposing parties with unredacted versions.  See NECivR 5.3, available on the court's Website at www.ned.uscourts.gov.

contest jurisdiction and/or venue.  If contested, such position is because:

> 1)
> Jurisdiction: <u>The Defendants do not contest that this Court has federal question jurisdiction over the Plaintiffs' claims. Cognizant that the Court ruled on the issue in its order at Filing 53, the Defendants maintain, as they asserted in support of their motion to dismiss at Filing 34, that the Court lacks subject matter jurisdiction over the claims against the BOP Defendants because no Plaintiff has pleaded that they are presently eligible for parole or that they face an actual or imminent concrete injury traceable to the BOP Defendants. The Plaintiffs have thus failed to allege sufficient facts to establish standing to sue the BOP Defendants. Even if the Plaintiffs have established standing, Article III jurisdiction is lacking over the claims against the BOP Defendants because such claims are unripe.</u>

> 2)
> Venue: <u>Venue is not contested.</u>

B.    <u>Immunity</u>:  The defendant

_____ has raised

_____ will raise

__X___ will not raise

an immunity defense based on_____.

C.    If either jurisdiction or venue is being challenged, or if a defense of immunity will be raised, state whether counsel wish to delay proceeding with the initial phases of discovery until those issues have been decided, and if so, state (i) the earliest a motion to dismiss or transfer will be filed, and (ii) what, if any, initial discovery, limited to that issue, will be necessary to resolve the motion. _____

**<u>Defendants' Position</u>:**
As explained more fully below, the Defendants intend to raise the affirmative defense that some or all of the Plaintiffs failed to exhaust administrative remedies prior to filing suit in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), thereby precluding all of their asserted claims. Although not a jurisdictional or immunity issue, it should have the same effect of limiting the initial scope of discovery to only those materials relevant to addressing exhaustion. The

2

Defendants anticipate that a summary judgment motion on this issue can be filed within 60 days of the Court's entry of the initial progression order. The Defendants also propose that discovery be bifurcated for class certification and merits litigation.

**Plaintiffs' Position:**

As explained more fully below, in the context of discovery limitations, the Plaintiffs' oppose the bifurcation or limitation of discovery in this matter.

D.      Rule 11 Certification:  As a result of further investigation as required by Fed. R. Civ. P. 11, after filing the initial pleadings in this case, the parties agree that the following claims and defenses raised in the pleadings do not apply to the facts of this case, and hereby agree the court may dismiss or strike these claims and defenses at this time (an order adopting this agreement will be entered).

II.    **CLAIMS AND DEFENSES:**

A.      Plaintiff's Claims, Elements: The elements of the Plaintiff's claims and the elements disputed by Defendant are as follows.  For each claim, list and number each substantive element of proof. (DO NOT repeat boilerplate allegations from pleadings):

**Plaintiffs' Position Regarding Class Certification:**

Plaintiffs will move for class certification in this case. Because this matter is suitable for class certification and for the sake of avoiding further delay and expense, Plaintiffs sought a stipulation to class certification which Defendants refused. Plaintiffs then sought stipulations as to the individual elements of class certification which Defendants refused.

**Defendants' Position Regarding Class Certification:**

As stated in the Complaint, the Plaintiffs have stated they will move for class certification at some point in the future. Rather than repeat their position on class certification for each of the Plaintiffs' causes of action that follow, the Defendants provide this single statement of their position regarding class certification.

The Defendants deny this matter is suitable for class certification and affirmatively allege that the Plaintiffs do not have standing to assert their claims on behalf of other individuals and that

the Plaintiffs are not proper class representatives. The Defendants deny the proposed class and subclasses are so numerous that joinder of all members is impracticable. The Defendants deny there are questions of law and fact common to the members of the proposed class and subclasses. The Defendants deny the claims of the Plaintiffs are typical of those of the proposed class and subclasses. The Defendants deny the Plaintiffs are capable of fairly and adequately protecting the interests of the proposed class and subclasses.

1.      **First Cause of Action;**
        **All Plaintiffs v. Defendants Frakes and Deol;**
        **Eighth Amendment Cruel and Unusual Punishment; 42 U.S.C § 1983.**

**<u>Plaintiffs' Statement:</u>**

The Defendants fail to provide adequate medical care, mental health care, and dental care to the class in violation of the 8th Amendment of the United States Constitution. Specifically, the Defendants have a policy and practice of failing to provide prisoners with adequate medical, mental health and dental care, and are deliberately indifferent to that fact that the systemic failure to do so results in significant injury and a substantial risk of serious harm, depriving class member of their Eighth Amendment rights.  The systemic deficits of the facilities operated by the Defendants causes common harm to all members of the class in that the medical, mental health and dental care systems of these facilities do not possess the fiscal, or human, resources to meet the collective needs of the class members. The Defendants' continued failure to invest sufficient resources into the medical, mental health and dental care system of the facilities they are responsible for overseeing, and implement policies consistent with modern health care standards of practice, has directly resulted in all class members receiving physical health care services that are of a low quality, administered inefficiently or incorrectly, and administered with deliberate indifference to the class members' prior medical history or the current circumstances of their

4

incarceration. Furthermore, the systemic inadequacies of the facilities operated by the Defendants places a greater strain on the physical health care system due to the heightened risk of injury and death facing the class stemming from Defendants' inability to adequately serve and protect the class.

**Elements:**

1.      The medical, mental health and dental care system operated by the Defendants fail to provide minimally adequate health care to Nebraska prisoners, exposing all Nebraska prisoners to serious harms and substantial risk of serious harms, including suffering, deterioration of health, and death.

2.      Defendants' fiscal, policy, and management decisions and failures to take reasonable measures to correct the systemic deficiencies in their medical, mental health, and dental care systems evince deliberate indifference to the known and obvious substantial risk of serious harm to which all Nebraska prisoners are exposed.

We disagree with Defendants' characterization of Plaintiffs' statement of the elements of our claims.  Defendants do not point to any aspect of Plaintiffs' statement of their claims that they believe do not correctly state the applicable legal elements.

**Defendants' Statement:**

The Defendants dispute all of the foregoing and assert that the Plaintiffs' foregoing statement does not fully state the legal elements of this claim. The Eighth Circuit recently set forth the governing standards for an Eighth Amendment deliberate indifference claim as follows:

> The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes. In regards to prison

conditions, confinement, and medical care while in prison, the constitutional question is whether defendants acted with deliberate indifference. A prison official is deliberately indifferent if she knows of and disregards a serious medical need or a substantial risk to an inmate's health or safety. The deliberate indifference standard has both objective and subjective prongs. The plaintiff must prove that he suffered from an objectively serious medical need and that defendants actually knew of but deliberately disregarded his serious medical need. A medical condition is objectively serious if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need. … The subjective prong of deliberate indifference is an extremely high standard that requires a mental state of more than gross negligence.  It requires a mental state 'akin to criminal recklessness. Even medical malpractice does not automatically constitute deliberate indifference.

Saylor v. Nebraska, 812 F.3d 637, 643–44 (8th Cir. 2016) (internal quotations and citations omitted). As stated above and in the Defendants' Answer (Filing 63), the Defendants submit the Plaintiffs cannot meet their burden on any component of this standard.

6

**2(a)     Second Cause of Action;**
**         Eighth Amendment Component;**
**         Isolation Subclass v. Defendants Frakes and Deol**

**Plaintiffs' Statement:**

The Defendants subject the Isolation Subclass to a substantial risk of serious harm from conditions in isolation, including but not limited to inadequate physical exercise, inadequate nutrition, inadequate mental health treatment, excessive use of five-point restraints, and conditions of extreme social isolation and environmental deprivation.  Defendants continue this harmful practice despite the growing body of evidence of the harms of prolonged isolation.  Defendants' overutilization of isolation stems from the systemic deficits of the facilities operated by the Defendants which causes common harm to all class members in isolation due to the lack of fiscal, or human, resources necessary to meet the collective needs of the Subclass.  The Defendants' continued failure to invest sufficient resources into the healthcare, staffing, physical structures, and programming has directly resulted in the overuse of solitary confinement within the Defendants' facilities as a means of population control without regard to the mental, physical, or dental needs of the class members in isolation.

**Elements:**

1.     Defendants follow policies and practices that result in members of the Isolation Subclass being subjected to prolonged confinement in isolation units, exposing the Isolation subclass to substantial physical and psychiatric harms and the substantial risk of such harms.

2.     Defendants' policy and practice decisions resulting in overuse of prolonged isolation evince deliberate indifference to the known and obvious substantial risks of serious harm attendant to such isolation.

We disagree with Defendants' characterization of Plaintiffs' statement of the elements of our claims.  Defendants do not point to any aspect of Plaintiffs' statement of their claims that they believe do not correctly state the applicable legal elements.

**Defendants' Statement:**

The Defendants dispute all of the foregoing. The Defendants again submit that the Plaintiffs have not fully stated the governing legal standard. To the extent the Plaintiff's Second Cause of Action is one of deliberate indifference under the Eighth amendment, the quotation from Saylor above sets out the correct standard. To the extent this cause of action arises as a conditions-of-confinement claim, the governing standard is as follows.

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir.2004); Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. Even if no single condition of confinement would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. Id. at 363–64; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir.1989).

8

2(b)    **Second Cause of Action;**
        **Americans with Disabilities Act Component;**
        **Isolation Subclass v. Defendant NDCS**

**Plaintiffs' Statement:**

Defendants have a policy and/or practice of confining persons in isolation units because of their mental illness, which is a form of disability discrimination.  Confinement in isolation by reason of disability deprives Isolation Subclass members of the opportunity to participate in services, programs or activities that are offered in Defendants' non-isolation units.  Such policies and practice violate Title II of the Americans with Disabilities Act, as well as the implementation regulations that prohibit placing prisoners "with disabilities in facilities that do not offer the same programs as the facilities where they would otherwise be housed."  28 C.FR. § 35.152(b)(2).

**Elements:**

1.      NDCS is a public entity subject to Title II of the Americans with Disabilities Act.

2.      NDCS pursues policies and practices that result in the placement of persons with disabilities in isolation because of their disabilities.

3.      Placement in isolation deprives prisoners with disabilities of access to services, programs or activities that are offered in Defendants' non-isolation units by reason of their disabilities.

We disagree with Defendants' characterization of Plaintiffs' statement of the elements of our claims.  Defendants do not point to any aspect of Plaintiffs' statement of their claims that they believe do not correctly state the applicable legal elements.

[3241567.1] [3232179.1]

**Defendants' Statement:**

The Defendants stipulate to the first of the Plaintiffs' above-stated elements, but dispute the remaining elements. This Court recently stated the governing standard for an ADA claim in the correctional setting as follows:

> Under the ADA, there are two means of discrimination: (1) disparate treatment (intentional discrimination) and (2) the failure to make reasonable accommodations. Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004). In order to sufficiently allege that a correctional facility and its administrators and medical staff violated Title II of the ADA, an inmate must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the jail's services, programs, or activities, or was otherwise subjected to discrimination by the jail; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability." Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010). Disparate treatment discrimination is based on the "employer's intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." Id. at 767. "The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if he was motivated by the disability." Id. Title II provides that " 'qualified individual[s] with a disability' are entitled to 'meaningful access' to such benefits." Mason, 559 F.3d at 886 (quoting Randolph, 170 F.3d at 857-58). To allege a violation of Title II, a plaintiff "must specify a benefit to which he was denied meaningful access based on his disability." Id. at 888.

Cotton v. Douglas Cty. Dep't of Corr., No. 8:16CV153, 2016 WL 5816993, at *5 (D. Neb. Oct. 5, 2016).

3.      **Third Cause of Action;**
        **Americans with Disabilities Act;**
        **Disability Subclass v. Defendants NDCS and BOP**

<u>**Plaintiffs' Statement:**</u>

The NDCS and BOP offer programs, services, and activities to all prisoners for which the

Disability Subclass Plaintiffs and the Disability Subclass are qualified, which include but are not

limited to:  sleeping; eating; showering; toileting; communicating with those outside the prison by

mail and telephone; exercise; entertainment; safety and security; administrative, disciplinary and

classification proceedings; medical, mental health and dental services; the library; educational,

vocational, substance abuse and anger management classes; discharge services; and prisoner

interviews, key reviews, parole hearings and re-hearings by the BOP.  The NDCS and BOP

Defendants' policies and procedures routinely violate the ADA and its implementing regulations

on a systemic level by discriminating against people because of their disabilities, by denying

people with disabilities the benefits of the programs, services and activities offered to prisoners,

and by failing to provide reasonable modifications, removal of architectural, communication or

transportation barriers and appropriate auxiliary aids and services so that they can participate in all

programs, services and activities offered by NDCS and BOP, thereby harming the Disability

Subclass.

The following acts and omissions by NDCS and BOP constitute separate violations of the

ADA rights of the Disability Subclass (Plaintiffs reserve the right to supplement this list after

discovery):

1.      Failure to create and maintain a system to identify and track prisoners with

disabilities and the accommodations they require, as required by the ADA.

2.      Failure to provide an effective and functional grievance system for prisoners with disabilities.

3.      Failure to develop policies and procedures for prisoners with disabilities to request reasonable accommodations—including for BOP's parole consideration and revocation hearings and other parole processes, and for programs, services, and activities offered to prisoners in NDCS facilities.

4.      Failure to inform prisoners with disabilities how to request accommodations or report disability discrimination, as required by the ADA.

5.      Imposition of eligibility criteria and administration methods that screen out prisoners with disabilities and subject them to discrimination by housing them in isolation due to their disability, and by failing to remedy physical barriers that deny them full and equal enjoyment of programs, services and activities offered at NDCS facilities.

6.      Using parole granting criteria that screen out people with disabilities on the basis of disability.

7.      Failure to make reasonable modifications in policies, procedures and practices necessary to avoid discrimination because of disability on a systemic basis.

8.      Failure to develop systems to notify prisoners with disabilities of announcements or emergencies and to ensure prisoners with disabilities are safely evacuated from NDCS facilities in the event of an emergency.

9.      Failure to ensure that prisoners with disabilities who require assistive devices are provided with and allowed to retain those devices.

10.      Failure to provide appropriate accessible housing and transportation.

12

11.     Implementation of policies and practices that authorize staff to initiate disciplinary proceedings and use force against prisoners who fail to follow orders because of their disabilities without any reasonable accommodation or modification.

12.     Failure to ensure equally effective communication with prisoners with disabilities, including by furnishing the appropriate auxiliaries aids and services where necessary to ensure an equal opportunity to participate in and enjoy the benefits of a program, service, or activity, as required by the ADA, including failing to provide qualified sign language interpreters, videophones, and other accessible formats to ensure effective communication.

13.     Construction and/or alteration of facilities after Title II's effective date without regard for make the facilities accessible, including by failing to install and maintain features such as grab bars to allow prisoners with mobility disabilities to shower and toilet safely and independently, and failing to address barriers such as narrow doorways, raised lips and steps, steep slopes, inaccessible dining tables and yards, inaccessible exercise equipment, and inaccessible paths of travel for prisoners with mobility disabilities.

**Elements.**

1.     The Disability Subclass consists of persons with disabilities that substantially limit major life activities.

2.     The Disability Subclass consists of persons who are qualified with or without reasonable accommodations to participate in the programs, services, and activities offered by the NDCS and BOP.

3.     The NDCS and BOP are public entities governed by Title II of the ADA.

4.      The NDCS and BOP pursue policies and practices that have the effect of denying members of the Disability Subclass access to NDCS and BOP programs, services, and activities by reason of their disabilities.

We disagree with Defendants' characterization of Plaintiffs' statement of the elements of our claims.  Defendants do not point to any aspect of Plaintiffs' statement of their claims that they believe do not correctly state the applicable legal elements.

**<u>Defendants' Statement:</u>**

The Defendants stipulate that  NDCS  and BOP are public entities governed by  Title II of the ADA, but dispute the remainder of the elements listed by the Plaintiffs above. The elements are set forth in the Defendants' Statement to cause of action 2b, above.

14

4.      **Fourth Cause of Action;**
        **Rehabilitation Act, 29 U.S.C. § 794;**
        **Disability Subclass v. Defendants NDCS and BOP**

**<u>Plaintiffs' Statement:</u>**

Defendants exclude class members, solely by reason of their disabilities, meaningful access to the programs and services of the Nebraska Department of Corrections and Board of Parole in violation of 29 U.S.C. § 794(a).

The acts and omissions underlying this claim are identical to those listed in Claim 3.

The Elements are the same as those listed in Claim 3 with the addition of the element that the NDCS and BOP are recipients of federal funds.

We disagree with Defendants' characterization of Plaintiffs' statement of the elements of our claims.  Defendants do not point to any aspect of Plaintiffs' statement of their claims that they believe do not correctly state the applicable legal elements.

**<u>Defendants' Statement:</u>**

The Defendants stipulate that NDCS and BOP are subject to the ADA and Rehabilitation Act and that they are recipients of federal funds, but dispute the remainder of the elements listed by the Plaintiffs above. The elements are set forth in the Defendants' Statement to cause of action 2b, above.

B.      Defenses.  The elements of the affirmative defenses raised by the pleadings are as follows.  List each affirmative defense raised or expected to be raised by the defendant(s), and the substantive elements of proof.  (DO NOT repeat boilerplate allegations from pleadings or deny matters on which the plaintiff has the burden of proof):

**Plaintiffs' Position:**

None of the defenses Defendants raise below are applicable in this case.

**Defendants' Position:**

1)      DEFENSE ONE: Failure to exhaust administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) Elements:

Prisoners must exhaust administrative remedies before filing federal claims. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). To exhaust, prisoners must "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Here, some or all of the Plaintiffs have failed to exhaust the administrative remedies available to them under Nebraska law before bringing this suit.

16

2.     DEFENSE TWO: Collateral estoppel (including claim preclusion and issue preclusion). Elements:

Claim preclusion bars the relitigation of a claim that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.[12] Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[13] Issue preclusion applies only to issues actually litigated.

On the Defendants' information and belief, some or all of the Plaintiffs have litigated or are in the process of litigating claims or issues raised in the complaint but which are barred by this doctrine. The Defendants intend to preserve this affirmative defense until they are assured of its inapplicability to this case.

3.      DEFENSE THREE: Statute of limitations. Elements:

> The law of the state in which a § 1983 action is brought provides the appropriate statute of limitations. Bauers v. City of Lincoln, 245 Neb. 632, 514 N.W.2d 625 (1994). "[F]or purposes of selecting one statute of limitations, § 1983 actions shall be characterized as personal injury actions." Bauers, 245 Neb. at 646, 514 N.W.2d at 634. In Nebraska, § 1983 claims are governed by the statute of limitations in Neb.Rev.Stat. § 25–207 (Reissue 2008). See Bauers, supra. Section 25–207 requires that actions for an injury to the plaintiff's rights be filed within 4 years from the date on which the action accrued. Bauers, supra.

Anthony K. v. Nebraska Dep't of Health & Human Servs., 289 Neb. 540, 552–53, 855 N.W.2d 788, 798–99 (2014).

The Defendants intend to preserve this affirmative defense until they are assured of its inapplicability to this case.

18

4)      OTHER DEFENSES:

The Defendants have in their Answer affirmatively pleaded several other affirmative defenses and placed the Plaintiffs on notice that they will raise such affirmative defenses should subsequent discovery disclose facts that support such defenses.  Addressing the elements of such defenses is unnecessary at this juncture, but the Defendants reserve the right to assert them in the future.

III.    SETTLEMENT:

Counsel state:

\_\_\_\_\_ There have been no efforts taken yet to resolve this dispute.

\_\_\_\_\_ This dispute has been the subject of efforts to resolve it

\_\_X\_\_\_ prior to filing in court.

_____ after court filing, but before the filing of this report.

\_\_\_\_\_ Counsel have discussed the court's Mediation Plan and its possible application in this case with clients and opposing counsel.

\_\_\_\_\_ Mediation will be appropriate in this case at some point.

\_\_\_X\_\_\_ Mediation will not be appropriate because of the complex multifaceted nature of this case.

\_\_ X\_\_\_\_The Plaintiffs' counsel believe that with further efforts in the future, the case can be settled.  The Defendants disagree

Explain.

**Plaintiffs' Position:**

In the Fall of 2016, the ACLU of Nebraska offered to meet with the Governor of Nebraska regarding the conditions in the state's prisons.  The Governor declined the meeting.

On April 10, 2017, Plaintiffs' counsel sent a letter to the Governor of Nebraska outlining how the conditions in the Nebraska prisons violate federal law, offering again to discuss necessary remedial measures, and asking for a response within 10 days.  Corrections Director Frakes responded in writing on April 20, 2017, describing steps already undertaken by the Department, but offering no new measures.

There are various mechanisms to move this case toward a negotiated resolution, ending with an enforceable consent decree that allows the Nebraska officials to design remedial measures

that are appropriate for the unique circumstances of each facility and program. For example, the parties could explore agreeing on a group of neutral experts to review the facilities, programs, and staffing and report to the parties and the Court on the measures necessary to ensure that inmates receive adequate medical, mental health and dental care, to prevent harmful over-reliance on isolation units, and to provide all prisoners meaningful access to NDCS and BOP programs, services and activities. This neutral expert approach can prevent wasteful and prolonged litigation, and instead begin immediate improvement in conditions.

**Defendants' Position:**

The Defendants dispute that any of the actions described by the Plaintiffs above constituted efforts toward a reasonable "settlement" of this dispute. Rather, the letter described by the Plaintiffs—delivered to Nebraska government leaders in ultimatum form accompanied by a media campaign by the ACLU—contained erroneous characterizations of the function and characteristics of Nebraska's correctional system, and relied on materials of dubious application to this case.

In any event, the Defendants can state in good faith that they do not believe this case is appropriate for settlement. The Plaintiffs' allegations are overwhelmingly without merit and are subject to a number of defenses the Defendants have or intend to raise. It is the Defendants' reasoned position that this litigation is appropriately resolved only by the Court.

[3241567.1] [3232179.1]

21

IV.    **CASE PROGRESSION:**

A.    Do any of the parties believe an initial planning conference would be beneficial and/or should be held before a final scheduling order is entered? Yes.

B.    Mandatory disclosures required by Rule 26(a)(1), including a statement of how each matter disclosed relates to the elements of the disclosing party's claims or defenses

\_\_\_\_\_ have been completed.

\_X\_\_\_ will be completed by May 15, 2018.

C.    Motions to amend the pleadings or to add parties.

1)    The plaintiff

\_X\_\_\_does

\_\_\_\_\_ does not

anticipate need to amend pleadings or add parties.  Any motions to amend pleadings shall filed no later than June 14, 2019.

2)    The defendant

\_\_\_\_\_ does

X\_\_\_\_\_does not

anticipate need to amend pleadings or add parties.

D.    Experts.

1)    If expert witnesses are expected to testify at the trial, counsel agree to at least **identify** such experts, by name and address, (i.e., without the full reports required by Rule 26(a)(2)),  May 21 (Plaintiffs) and June 21, 2018 (Defendants).

2)    Experts and, unless otherwise agreed, expert **reports** shall be served by May 6, 2019. Supplemental expert reports responding to initial expert reports shall be served 30 days after initial reports.

22

**Defendants' Statement Regarding Expert Timing:** The Defendants would add that there is a dispute over whether and to what extent discovery should be bifurcated into class certification and merits phases. Should discovery be bifurcated, and if expert testimony is to be utilized by the parties for class certification purposes, expert report disclosure should, of course, be moved up in accordance with what would presumably be a class certification motion before the end of 2018.

        3)     Motions to exclude expert testimony on *Daubert* and related grounds will be filed by August 28, 2019.

E.     Discovery.

        1)     Written discovery under Rules 33 through 36 of the Federal Rules of Civil Procedure will be completed by May 6, 2019.

        2)     Depositions, whether or not they are intended to be used at trial, will be completed by August 1, 2019

3)     Agreed Discovery Procedures:

a.     <u>Unique Circumstances</u>. The following facts or circumstances unique to this case will make discovery more difficult or more time consuming:

The scope and breadth of the Plaintiff's allegations on behalf of the class will require the production of a large number of documents, and necessitate the coordination of many depositions involving individuals that may take a great deal of time and effort. Given this, the Plaintiffs believe that the periods described herein will allow Plaintiffs and Defendants to use all of the discovery tools provided under the Federal Rules and to use them in the most efficient and productive sequence.

Counsel have proposed the following actions to address that difficulty:

**<u>Parties' Position on Bifurcated, Phased Discovery:</u>**

**<u>Plaintiff's position:</u>**

Plaintiffs do not agree to a bifurcated, phased discovery process.  Discovery has not yet commenced in this matter, nearly seven months after Plaintiffs filed their complaint on August 15, 2017.  Bifurcating discovery into three phases—exhaustion, class certification, and merits—would result in

unnecessary delay and increased expense to both parties.  Because of the substantial overlap in discovery relevant to class certification and the merits of Plaintiffs' claims, the bifurcation proposed by Defendants will increase the likelihood that the parties will need to seek the court's intervention to resolve disputes over the scope of discovery, increasing costs for the parties and reducing judicial economy.

**Defendants' Position on  Bifurcated Discovery:**

The Defendants intend to make an early motion for summary judgment based on the Plaintiffs' failure to exhaust their administrative remedies, as required by the PLRA. Since such failure may serve as a bar to the Plaintiffs' claims altogether, that motion will be potentially dispositive of the entire case.

More important than the need for initial discovery limits to facilitate resolving the exhaustion issue, the Defendants propose bifurcation of discovery for class certification and merits litigation. The parties fundamentally disagree on whether this case, or any portion thereof, can be certified as a class action. The Plaintiffs have not yet moved for class certification and have not indicated when they intend to do so. The Defendants suggest the Court mandate that a motion for class certification be made as soon as is reasonably possible, and further propose that discovery be bifurcated and phased to facilitate separate discovery on class certification and merits issues. Given the importance of this issue, the Defendants will move for discovery bifurcation by a separate motion with

a supporting brief. The Defendants will do so with adequate time for the Plaintiffs to respond so that the Court has the benefit of the parties' briefing on this issue by the time a planning conference is held with the Court.

**Plaintiffs' Position on Exhaustion Discovery:**

The Defendants forthcoming motion for summary judgment under the PLRA, even if successful, would not be dispositive. The Plaintiffs' have at least one named Plaintiff in each of the respective classes, and subclasses, that has exhausted their administrative remedies under the PLRA. As this motion cannot possibly be dispositive of the case, and class certification will be sought regardless of the outcome of this motion, the Plaintiffs oppose delaying discovery related to class certification.

**Defendants' Response to Plaintiffs' Position on Exhaustion Discovery:**

The Defendants' intended PLRA exhaustion arguments will not be framed as a standing issue, so the Plaintiffs' foregoing statement is inapplicable. In any event, the Defendants do not propose an outright pause on all discovery, but rather reasonable limits on invasive, far-reaching depositions and burdensome document requests during this initial phase. The Defendants further note that the bulk of the Plaintiffs' respective institutional files will be among the Defendants' initial disclosures, thus providing the Plaintiffs with immediate access to the records universe relevant to the administrative exhaustion issues.

b.      Electronic Discovery Provisions: Counsel have conferred regarding the preservation of electronically produced and/or electronically stored

information or data that may be relevant--whether privileged or not--to the disposition of this dispute, including:

      (i)     The extent to which disclosure of such data should be limited to that which is available in the normal course of business, or otherwise;

      (ii)     The anticipated scope, cost, and time required for disclosure of such information beyond that which is available in the normal course of business;

      (iii)     The format and media agreed to by the parties for the production of such data or information as well as agreed procedure for such production;

      (iv)     Whether reasonable measures have been implemented to preserve such data;

      (v)     The persons who are responsible for such preservation, including any third parties who may have access to or control over any such information;

      (vi)     The form and method of notice of the duty to preserve;

      (vii)     Mechanisms for monitoring, certifying, or auditing custodial compliance;

      (viii)     Whether preservation will require suspending or modifying any routine business processes or procedures, records management procedures and/or policies, or any procedures for the routine destruction or recycling of data storage media;

      (ix)     Methods to preserve any potentially discoverable materials such as voicemail, active data in databases, or electronic messages;

      (x)     The anticipated costs of preserving these materials and how such costs should be allocated; and

      (xi)     The entry of and procedure for modifying the preservation order as the case proceeds.

The parties agree that:

_____   No special provisions are needed in respect to electronic discovery. The court should order protection and production of such information in accordance with its usual practice.

__X___As to electronically stored information (ESI), the following provisions will be followed by the parties:

Discoverable ESI in this matter will include, among other things:

**Plaintiffs' Position:**

1.      Defendants' electronic communications (as well as text, instant messaging, proprietary instant messaging, et cetera) communications regarding policies, practices, budgeting, staffing and management of the functions at issue in this case, which include medical, mental health, and dental, isolation, discipline, parole consideration, parole planning, parole revocation, and program access for persons with disabilities.

2.      Documents in final and draft form on Defendants' shared computer servers and on the individual computers of a set of custodians to be determined regarding the subject matter of the lawsuit.

3.      Content of databases by which Defendants track the inmate and parolee population. Plaintiffs' counsel does not currently have information regarding the databases in use.  Examples of the database types at issue include CompStat, OBIS, NiCAMS.  The parties will meet and confer on an economical and efficient method of producing information from these databases.

4.      Electronic medical records.  The most efficient way to produce information from electronic medical records is to provide counsel with read-only live access to the databases, with HIPAA concerns addressed by a HIPAA qualified protective order.  This avoids the wasteful production of millions of pages of medical records blown out to paper or PDF.

[3241567.1] [3232179.1]

27

5.      Video and audio files, including but not limited to audio records of parole hearings, and surveillance video, body cam video, and hand-held video taken in connection with use of force incidents that are relevant to the mental health, disability and isolation claims.

All ESI production must be in native format with metadata intact.  Blow-outs to PDF are not acceptable.

Documents that exist in electronic form, even if such documents also exist in paper form, shall be produced in electronic form according to the following protocol:

1.  Electronic documents shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with document level load files wherein the full text was extracted directly from the native file where possible.

2.  For files produced in TIFF image form, each page of a produced document shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with, preferably in the lower right corner of the document. The production number shall contain at least six digits. In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document, preferably in the lower left corner. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

3.  Each document image file shall be named with the unique production number of the page of the document in question, followed by the extension (for example, ".tif").

28

4.  TIFF images shall be accompanied by a standard load file. The load file shall be produced in one of the following industry-standard formats: (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file. TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing document breaks and appropriate document unitization.

5.  In addition to TIFF images, each production of electronic documents shall include searchable text files corresponding to the TIFF images for each document. The full text of each native electronic document, excluding redacted documents, shall be extracted directly from the native file and produced in a document-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF document followed by the extension ".txt". YOU shall also perform OCR on certain types of non-text based static image ESI, such as native searchable PDF image files, and produce the corresponding document-level related text files. Searchable text files shall be generated from Extracted Text where available.

6.  Presentation documents (such as Microsoft PowerPoint) and spreadsheet documents (such as Microsoft Excel) shall be produced in native format. Either side may also make specific requests for individual documents to be produced in native format if reasonably necessary to obtain a complete and legible version of the document.  Each document in native format shall be produced together with a single page TIFF placeholder bearing the legend "Produced in Native Format," and stamped with the production numbers and any

applicable confidentiality labels as described above.  Load files containing the agreed upon metadata and extracted text shall also be provided for native documents.

7. For all documents, the parties shall include the following metadata fields: BegProd, EndProd, BegAttach, EndAttach, Custodian, DocExt, HashValue, and Confidentiality. In addition, the following metadata fields shall also be preserved and produced (if they exist): FileName, FilePath, Author, DateCreated, LastModifiedDate, To, From, CC, BCC, DateSent, DateReceived, Subject.

**Defendants' Position**:

The Defendants do not fundamentally disagree with the scope of the Plaintiffs' statement of *what* ESI should be subject to discovery, but rather the means by which it should be produced. Granting the Plaintiffs' counsel access to Nebraska government data systems is unacceptable. Depending on the category and type of materials sought, the parties should confer in good faith on a case-by-case basis to determine the most effective means of producing materials. To the extent such materials are electronic or in database form, the Defendants have no objection to making best efforts to produce such materials to the Plaintiffs in the materials' native format without "blowing out" to pdf. A rather large proportion of the discovery universe, however, will consist of records presently in pdf or in paper form and it is the Defendants' intention to produce such materials in their existing form.

The Defendants object to the Plaintiffs' proposed "protocol" for their receipt of records. This unilateral proposal takes account of neither the manner in which such records are currently maintained, nor the costs associated with converting records to meet the Plaintiffs' parameters. Should an issue arise in the future as to the means of production of a particular set of records, the

parties should confer at that time and seek the Court's guidance, if necessary. The Plaintiffs' proposals above are, at minimum, premature and should not be imposed as blanket obligations at the outset.

c.    <u>Privileged and/or confidential communications and information</u>.

**General practice**: Under the court's general practice, if any document is withheld from production or disclosure on the grounds of privilege or work product, the producing party shall, for each document, disclose a description of the document withheld with as much specificity as is practicable without disclosing its contents, including  (a) the general nature of the document; (b) the identity and position of its author; (c) the date it was written; (d) the identity and position of its addressee; (e) the identities and positions of all persons who were given or have received copies of it and the dates copies were received by them; (f) the document's present location and the identity and position of its custodian; and (g) the specific reason or reasons why it has been withheld from production or disclosure.   The non-producing party may move to compel documents identified on the privilege log. The producing party may also seek a protective order to preserve the privilege or confidentiality of the documents identified.

**Special provisions**.  To facilitate an early, efficient, and expeditious resolution of discovery issues which may arise related to documents withheld on the basis of alleged privilege or confidentiality, the parties shall discuss and consider:

(i)    Whether the parties anticipate discovery issues or challenges arising from non-disclosure of allegedly confidential information;

(ii)    Whether reasonable date ranges should be established after which privilege log entries for privileged or confidential information need not be made; and

(iii)    As contemplated by Rule 502(e) of the Federal Rules of Evidence, the need for and terms of any agreement regarding disclosure of privileged attorney-client communications or confidential work product, and whether the parties will seek court approval of any such agreement.

The parties agree that:

\_\_\_\_\_ No special provisions are needed regarding discovery of allegedly confidential information. If such issues arise, they will be resolved in accordance with the court's general practice.

\_\_X\_\_ In addition to, or in lieu of the court's general practice for asserting confidentiality claims and resolving disputes over nondisclosure of allegedly confidential information, the parties agree the following provisions will be followed: HIPAA qualified protective order to address access to medical and mental health records. The parties further agree that pursuant to Federal Rule of Evidence 502(d), the inadvertent disclosure of privileged or work product-protected information shall not operate as a waiver in this or any other federal or state proceeding.

d.      The maximum number of interrogatories, including sub-parts, that may be served by any side is 100. "Side" shall mean the Plaintiffs as a group and the Defendants as a group, respectively.

e.      The maximum number of depositions that may be taken by the plaintiffs as a group and the defendants as a group is 30.

f.      Depositions will be limited by Rule 30(d)(1), except the depositions of named defendants and experts, which by agreement shall be limited as follows:

The parties agree that all depositions will be conducted and defended by a single attorney per side.

The parties agree to advance all related costs of their own expert witnesses' preparation prior to being deposed by the other side, and to pay reasonable expert fees only for time spent deposing the other side's experts in arrears.

g.      The parties stipulate that they will be required to give at least 14 days' notice of their intention to serve records/documents or subpoenas on third parties prior to issuance. See NECivR 45.1

h.      Other special discovery provisions agreed to by the parties include:

32

**Plaintiffs' Position:**

The scope of this case is broad and multifaceted and will require a substantial amount of discovery. As such, the Plaintiffs are confident that compliance with the federal rules sufficiently protects the interests of all parties involved and that additional limitations on the number of requests for production or requests for admission are not appropriate at this point in time.

**Defendants' Position:**

The Defendants propose the following limitations:

> 1) That each side's limit on requests for production is 200.
>
> 2) That each side's limit on request for admissions is 100.
>
> 3) That each side is limited to 2 30(b)(6) depositions, with a limit of five topic areas per deposition.

As noted above, the Defendants believe discovery should be bifurcated between class certification and merits litigation. The Defendants will set out their position in more detail in a motion and supporting brief to follow shortly.

> F.     Other matters to which the parties stipulate and/or which the court should know or consider:
> _____.

> G.     Consent to Trial Before Magistrate Judge.

> In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case may voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including the trial, and order the entry of final judgment. The consent must be unanimous, and any appeal must be taken to the United States Court of Appeals.  If the parties do not presently consent, they may do so at a later time and the case will remain with the assigned United States District Judge or, if not previously assigned, will be randomly assigned to a United States District Judge.

> _____ All parties hereby voluntarily consent to have the United States Magistrate Judge conduct any and all further proceedings in this case including the trial, and order the entry of final judgment.

> ___X__ All parties do not consent at this time.

[3241567.1] [3232179.1]

33

I.      Trial date.

1)      Jury Trial:

        a.      __X___ No party has timely demanded a jury trial.

        b.      _____ A party has timely demanded a jury trial and does not anticipate waiving that demand, and the parties agree that all or part of the claims in this case must be tried to a jury.

        c.      _____ A party has demanded a jury trial, and the parties disagree on whether trial by jury is available in this case.  A motion to strike the (Plaintiff's/Defendant's) demand for jury trial will be filed no later than _____.

        d.      _____ Having previously demanded a jury trial, the Plaintiff now waives jury trial.  The Defendant will file a demand for jury trial within _____ days of the filing of this report, in the absence of which jury trial will be deemed to have been waived.

        e.      _____ Having previously demanded a jury trial, the Defendant now waives jury trial.  The Plaintiff will file a demand for jury trial within_____ days of the filing of this report, in the absence of which jury trial will be deemed to have been waived.

2)      This case will be ready for trial before the court by: (November, 2019). If more than eight months are required, state the special problems or circumstances that necessitate that much time for trial preparation:

The scope and breadth of the allegations made on behalf of the class will require significant efforts to prepare for trial. As exemplified by the Defendants' request for a continuance to respond to the Petition in this matter, the nature and scope of this case will likely take a great deal of time and effort by both parties to effectively litigate this matter. Given this, the parties believe that a scheduling a trial in November of 2019 will allow sufficient time to prepare the case for the court.

3)      The estimated length of trial is 15 court days.

Dated: _4/6/18_____

34

_____s/ Robert E. McEwen_____                 _s/ David A. Lopez_____
Counsel for Plaintiff(s)                          Counsel for Defendant(s)


CERTIFICATE OF SERVICE

I hereby certify that on _____4/6/18_____, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all of the parties.


_s/ Robert E. McEwen_


(Rev. 12/1/16)

[3241567.1] [3232179.1]                           35