## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **HANNAH SABATA, et al.,** | **Case No. 4:17-CV-3107** |
| **Plaintiffs,** | |
| v. | |
| **NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, et al.,** | **REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR DEFENDANT JULIE MICEK** |
| **Defendants.** | |

Defendant Julie Micek, in her official capacity as the Director of Supervision and Services for the Division of Parole Supervision, submits this reply brief in support of her motion for summary judgment.

## INTRODUCTION

Plaintiffs named the wrong defendant. They state they will amend their Complaint to remedy this, Filing 238 at 14, but insist Micek must remain in this action too. They provide no evidence why. Plaintiffs fail to adequately dispute any material fact; nor do they provide any cognizable argument that Micek is not entitled to a judgment as a matter of law.

First, in her brief in support of summary judgment, Micek described what she and the Division of Parole Supervision do within the context of parole. Essentially, Micek's role begins after an individual has been granted parole and released from prison. Plaintiffs do not dispute this. Instead, they assert for the first time in this case that their claims relate to the parole process *after* an individual has been

paroled. This, however, is not the least bit supported by the record.

Second, Plaintiffs' brief in opposition focuses on Plaintiff Hannah Sabata's preliminary revocation hearing and asserts she was not informed that she could retain or request counsel to be appointed to during that revocation process if she met certain eligibility requirements. Sabata's own evidence shows this statement is false. Filing 237-5 at 4, ¶ 9. Without this statement, Plaintiffs have not disputed Micek's statement that she has not excluded any Plaintiff, including Sabata, from participation in or denied the benefits of a service, program, or activity because of a disability.

Additionally, Plaintiffs mischaracterize the reason Sabata's parole was revoked. Plaintiffs attempt to portray her revocation as stemming solely from Sabata expressing suicidal ideation. This, again, is not supported by the evidence. Sabata's parole was revoked because she violated the conditions of parole. Regardless, the decision to revoke Sabata's parole was not up to Micek or the Division of Parole Supervision; it was made by the Board of Parole.

Third, Plaintiffs argue Micek should not be dismissed because the Division of Parole Supervision, by statute, maintains all records and files associated with the Board of Parole. However, the Board of Parole relies on the records and files of the Nebraska Department of Correctional Services ("NDCS") when determining whether an individual should be granted and released on parole. In contrast, the Division of Parole Supervision maintains the records and files associated with individuals who have been released on parole. Because Micek does not maintain or provide the Board

of Parole with access to NDCS records, any alleged deficiency with the records and files of inmates in the custody of NDCS cannot be imputed to Micek, nor can she provide the relief requested.

Since Plaintiffs have failed to dispute any material fact and failed to show any violation of either the ADA or Rehabilitation Act by Micek, Micek's motion for summary judgment should be granted and she should be dismissed from this case.

## LEGAL STANDARD

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*

## STATEMENT OF MATERIAL FACTS AND REPLY TO PLAINTIFFS'

1.  Defendant Julie Micek is the Director of Supervision and Services for the Division of Parole Supervision. Filing 224-1 at 1, ¶ 3.

    i.   <u>Plaintiffs' Response:</u> Undisputed.

2.  The duties of the Director of Supervision and Services are outlined in Neb. Rev. Stat. § 83-1,102 and § 3-404 of the Nebraska Board of Parole Rules. *Id.* at p. 2, ¶ 5.

    i.   <u>Plaintiffs' Response:</u> Undisputed.

3.  Micek supervises and administers the Division of Parole Supervision by

establishing and maintaining policies, standards, and procedures for parole services and community supervision of sex offenders. *Id.* at ¶ 6.

    i.    <u>Plaintiffs' Response:</u> Undisputed.

4.    Micek does not make decisions or recommendations to the Board of Parole as to whether an inmate should be granted or denied parole. *Id.* at ¶ 17.

    i.    <u>Plaintiffs' Response:</u> Undisputed.

5.    Micek has no involvement in notifying inmates of their parole eligibility. *Id.* at ¶ 18.

    i.    <u>Plaintiffs' Response:</u> Undisputed.

6.    Micek has no involvement in key review interviews, prisoner interviews, or parole board hearings. *Id.* at ¶ 19.

    i.    <u>Plaintiffs' Response:</u> Undisputed.

7.    Micek has no control over the location, mode, or manner in which parole hearings or parole revocation hearings occur. *Id.* at ¶ 20. All parole hearings are conducted at the NDCS facility where a given parole eligible inmate is located. *Id.* at 3-4, ¶ 21. All parole revocation hearings occur at the Lincoln Correctional Center in Lincoln, Nebraska. *Id.*

    i.    <u>Plaintiffs' Response:</u> Disputed. Micek has control over parole revocation preliminary hearings. Parole revocation preliminary hearings are conducted entirely by the Division of Parole Supervision, according to the Board of Parole's person most knowledgeable on the topic of "Policies, procedures and practices to provide prisoners with disabilities with

4

reasonable accommodations, modifications, auxiliary aids and services for parole hearings, prehearing preparation, post-hearing appeals, and parole revocation hearings." Filing No. 237-2, Bien-Kahn Decl., Ex. A, Excerpts from Transcript of December 4, 2018 Deposition of Nebraska Board of Parole (Rosalyn Cotton) ("Cotton Depo.") at 8:18-9:5; 68:10-69:10; 69:14-19; Filing No. 237-3, Bien-Kahn Decl., Ex. B, Plaintiffs' Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Nebraska Board of Parole.  The Division of Parole Supervision is entirely responsible for identifying disability accommodation needs in preliminary parole revocation hearings, and providing such accommodations.  Filing No. 237-2, Cotton Depo. at 73:19-74:3. The Division of Parole Supervision is responsible for evaluating whether a parolee needs appointed counsel due to disability-related accommodation needs in the preliminary revocation hearing. Filing No. 237-2, Cotton Depo. at 80:2-16; 103:10-21; 123:2-8.

ii.  **Micek's Reply: Plaintiffs do not dispute Micek's statement of material fact. Instead, they assert facts unrelated to their claim in this case that Micek and the Board of Parole "have failed to provide any process for requesting and/or receiving reasonable modifications in its practices and policies regarding notification of parole eligibility and in the conduct of the parole hearings themselves, thereby subjecting people with disabilities to a greater likelihood of *being denied parole* solely by reason of their**

5

**disabilities." Filing 1 at 81-82, ¶ 275 (emphasis added). Indeed, Plaintiffs' claims in this case have nothing to do with the parole revocation process, but only Plaintiffs' pursuit of being paroled.**

8. Micek has not excluded any Plaintiff with a disability, on the basis of disability, from participation in or denied the benefits of a service, program, or activity of the Division of Parole Supervision. Filing 224-1 at 3, ¶ 15.

    i. <u>Plaintiffs' Response:</u> Disputed. Micek's Division of Parole Supervision is responsible for preliminary parole revocation hearings and for the provision of disability accommodations at such hearings. Filing No. 237-2, Cotton Depo. at 68:10-69:10; 69:14-19; 73:19-74:3; 80:2-16; 103:10-21; 123:2-8. The Division of Parole Supervision maintains a policy, procedure and practice of failing to provide necessary accommodations for parolees with mental illness, including failing to appoint counsel in preliminary hearings, as occurred in the January 4, 2018 Preliminary Hearing for Plaintiff Hannah Sabata. Filing No. 237-4, Decl. of Hannah Sabata ("Sabata Decl.") ¶ 6; Filing No. 237-5, Sabata Decl., Ex. 1 at SABATA0002174-2175. The Division of Parole Supervision maintains a policy, procedure and practice of revoking the parole of persons such as Hannah Sabata, when contractors providing transitional reentry services state that the parolee's behaviors related to mental illness are "beyond the care and requirements of the program." Filing No. 237-5, Sabata Decl., Ex. 1 at SABATA0002175.

ii.  **Micek's Reply: Plaintiffs do not dispute Micek's statement of material fact. Again, Plaintiffs' counterstatement that the Division of Parole Supervision is involved in preliminary parole revocation process is immaterial to Plaintiffs' claims in this case.**

**Sabata's self-serving declaration does not dispute Defendants' statement of material fact. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). In her declaration, Sabata asserts that the Board of Parole did not inform her she could have a lawyer appointed to help with the parole revocation process. Filing 237-4 at 2, ¶ 13. This does not dispute Micek's statement of fact regarding her role and the Division of Parole Supervision.**

**Regardless, Plaintiffs' own evidence shows Sabata was informed of her right to an attorney. On December 28, 2017, Sabata was notified of the preliminary hearing and advised of her rights. Filing 237-5 at 4. Such rights included the right to be represented and retain counsel at her own expense, and that she was entitled to request the appointment of counsel if she met certain eligibility requirements. *Id.* Indeed, this advisory explicitly states how to**

request state appointed counsel. *Id.* This notice and advisement was again given to Sabata at her preliminary hearing on January 4, 2018. *Id.* at 10; see also *id.* at 7 ("Hannah Sabata Received written notice of this hearing on December 28, 2017, and declined the appearance of adverse state's witnesses. Ms. Sabata did not request the service of state appointed counsel either by letter or at the time of the hearing. The Hearing Officer explained Ms. Sabata's rights as well as revocation procedures.").

Plaintiffs cite no evidence to support their "policy, procedure and practice" allegations. Specifically, Plaintiffs' counterstatement that "the Division of Parole Supervision maintains a policy, procedure and practice of revoking the parole of persons such as Hannah Sabata, when contractors providing transitional reentry services state that the parolee's behaviors related to mental illness are 'beyond the care and requirements of the program'" is also incorrect.

First, the Division of Parole does not revoke an individual's parole. That decision is entirely up the Board of Parole. See Neb. Rev. Stat. §§ 83-1,121-123. Second, as demonstrated by Plaintiffs' own evidence in Filing 237-5 at 1, Sabata's parole was revoked because she violated the agreed upon Special Conditions stipulation when she was removed from the Living Water Rescue

8

Mission for failing to follow the rules of the facility and unsuccessful completion of the program. Filing 237-5 at 1.

Sabata's Arrest Violation Summary provides, in part, "Ms. Sabata had failed to follow staff's directive in regards to her attempting to contact an individual that she had previously been advised not to contact. Recently she has engaged in attempts to contact an individual which has indicated to this parole officer and Living Water staff that he does not want any communication with Ms. Sabata. Living Water staff have indicated that they had directed her not to contact this individual, however she continued to make attempts. When addressed by staff again, Ms. Sabata indicated that she was experiencing suicidal ideations. She was placed in Emergency Care to address her mental health needs." *Id.* at 5. At Sabata's parole revocation hearing on January 16, 2018, "it was decided by unanimous vote of the Board that [her] parole be revoked based upon [her] admission that she violated the Special Conditions stipulation when on or about December 22, 2017, [she] was removed from the Living Water Rescue Mission for failing to follow the rules of the facility and unsuccessful completion of the program." Filing 237-5 at 1.

In sum, Plaintiffs' evidence does not show Micek has excluded any Plaintiff with a disability, on the basis of disability, from

**participation in or denied the benefits of a service, program, or activity of the Division of Parole Supervision.**

9. Micek has not excluded any Plaintiff with a handicap, on the basis of handicap, from the opportunity to participate in or benefit from an aid, benefit, or service of the Division of Parole Supervision. Filing 224-1 at 3, ¶ 16.

    i.    <u>Plaintiffs' Response:</u> Disputed. See No. 8, above.

    **ii.**    **<u>Micek's Reply:</u> See Micek's Reply in No. 8, above. Plaintiffs' evidence does not show Micek has excluded any Plaintiff with a handicap, on the basis of handicap, from participation in or denied the benefits of a service, program, or activity of the Division of Parole Supervision.**

10. On July 1, 2016, the Office of Parole Administration ("Parole Administration") transitioned from the Nebraska Department of Correctional Services ("Department") to the Nebraska Board of Parole ("BOP"). Filing 224-1 at 2, ¶ 9.

    i.    <u>Plaintiffs' Response:</u> Undisputed.

11. Parole Administration did not participate in BOP hearings, was not responsible for providing accommodations for such hearings, and was not involved in deciding whether individuals were denied or granted parole. *Id.* at ¶ 10.

    i.    <u>Plaintiffs' Response:</u> Disputed. Parole Administration (now known as the "Division of Parole Supervision") is entirely responsible for preliminary revocation hearings. See Nos. 7-9 above.

    **ii.**    **<u>Micek's Response:</u> Plaintiffs do not dispute Micek's Statement of**

**material fact. Instead, Plaintiffs conflate the role of the Division of Parole Supervision in preliminary revocation hearings with the Board of Parole hearings at issue in this case.**

12. In July 2018, the Office of Parole Administration became the Division of Parole Supervision. Filing 224-1 at 2, ¶ 11.

   i.   <u>Plaintiffs' Response:</u> Undisputed.

13. The Division of Parole Supervision is responsible for: (a) the administration of parole services in the community; (b) the maintenance of all records and files associated with the Board of Parole; (c) the daily supervision and training of staff members of the division, including training regarding evidence-based practices in supervision; and (d) the assessment, evaluation, and supervision of individuals who are subject to parole supervision, including lifetime community supervision. Neb. Rev. Stat. § 83-1,100.

   i.   <u>Plaintiffs' Response:</u> Undisputed.

14. The Division of Parole Supervision has not excluded any Plaintiff with a disability, on the basis of disability, from participation in or denied the benefits of a service, program, or activity of the Division of Parole Supervision. Filing 224-1 at p. 3, ¶ 13.

   i.   <u>Plaintiffs' Response:</u> Disputed. See Nos. 7-9 above.

   **ii.   <u>Micek's Reply:</u> See Micek's Reply in Nos. 7-9, above.**

15. The Division of Parole Supervision has not excluded any Plaintiff with a handicap, on the basis of handicap, from the opportunity to participate in or

benefit from an aid, benefit, or service of the Division of Parole Supervision. Filing 224-1 at 3, ¶ 14.

    i.    Plaintiffs' Response: Disputed. See Nos. 7-9, above.

    ii.    **Micek's Reply: See Micek's Reply in Nos. 7-9, above.**

### RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

16. Plaintiff Hannah Sabata is a person with a disability. She has impairments arising from multiple serious mental illnesses. Filing No. 237-6, Decl. of Pablo Steward ("Stewart Decl.") ¶¶ 22-24.

    i.    **Micek's Response: It is undisputed for purposes of this motion for summary judgment only that Sabata is a person with a disability and has multiple serious mental illnesses.**

17. The Board of Parole does not track the needs of prisoner or parolees with disabilities in any way. Filing No. 237-2, Cotton Depo. At 95:16-18.

    i.    **Micek's Response: Undisputed that the Board of Parole does not independently track the needs of prisoners or parolees with disabilities. Nebraska law provides, "The Board of Parole shall have the power to direct the Director of Correctional Services to keep records concerning committed offenders which the board deems pertinent to its functions." Neb. Rev. Stat. § 83-197. Accordingly, the Board of Parole uses and relies upon NDCS records to review an inmate's file. Filing 245-2 at 2, ¶ 9. Such records include presentence investigation reports, misconduct**

**reports, employment history within the institution, program participation, risk assessments, decision guidelines, and classification and recommendations by NDCS.** *Id.* **All accommodations for key reviews, prisoner interviews, and hearings are the responsibility of the particular NDCS facility the parole eligible inmate is located.** *Id.* **at 2, ¶ 12. If an inmate requests an accommodation directly to the Board, or if the Board becomes aware that an accommodation is needed, the Board informs NDCS to provide such an accommodation.** *Id.*

18. The Board of Parole's lack of a tracking system for parole proceedings is, by statute, the responsibility of Division of Parole Supervision. Neb. Rev. Stat. § 83-1,100.

   i. **Micek's Response: Disputed. Neb. Rev. Stat. § 83-1,100(b) provides that the Division of Parole Supervision are responsible for "[t]he maintenance of all records and files associated with the Board of Parole." This does not include, as Plaintiffs characterize it, a "tracking system for parole proceedings." Instead, Nebraska law provides, "The Board of Parole shall have the power to direct the Director of Correctional Services to keep records concerning committed offenders which the board deems pertinent to its functions." Neb. Rev. Stat. § 83-197. Indeed, the records used and relied upon by the Board of Parole when working with and**

**determining whether an inmate should be granted parole are provided and maintained by NDCS. Filing 245-2 at 2, ¶ 9; Filing 245-1 at 2, ¶ 7. The Division of Parole Supervision is responsible for those records related to individuals who have already been released and granted parole. Filing 245-1 at 2, ¶ 6.**

## ARGUMENT

### I.  Micek has no involvement with Plaintiffs' claims.

Neither Micek, nor the Division of Parole Supervision have anything to do with the claims or requested relief in Plaintiffs' Complaint. Micek has absolutely nothing to do with making decisions or recommendations to the Board of Parole as to whether an inmate should be granted or denied parole. Filing 225 at 3, ¶ 4; Filing 224-1 at 3, ¶ 17. Micek has no involvement in notifying inmates of their parole eligibility. Filing 225 at 3, ¶ 5; Filing 224-1 at 3, ¶ 18. Micek has no involvement in key review interviews, prisoner interview, or parole board hearings. Filing 225 at p. 3, ¶ 4; Filing 224-1 at p. 3, ¶ 19. Micek has no control over the location, mode, or manner in which parole hearings occur because all such hearings are conducted at the Nebraska State Correctional Services facility where a given parole eligible inmate is located. Filing 225 at 3, ¶ 7; Filing 224-1 at 3, ¶¶ 20, 21. In sum, Micek has absolutely no involvement in an inmate's pursuit of being paroled. This is undisputed.

Yet, in their brief, Plaintiffs assert—for the very first time in this case—that their claims against Micek include the parole process *after* an individual has been granted and released on parole. The record, however, does not support this assertion.

14

Except for their response to the instant motion, Plaintiffs have so far failed to even hint their claims have anything to do with parole revocation hearings or anything related to parole supervision.

Plaintiffs have consistently made clear their claims against the Board of Parole and Micek have to do with Plaintiffs' pursuit of being paroled. In their Complaint, Plaintiffs allege the "BOP Defendants have failed to provide any process for requesting and/or receiving reasonable modifications in its practices and policies regarding notification of parole eligibility and in the conduct of the parole hearings themselves, thereby subjecting people with disabilities to a greater likelihood of *being denied parole* solely by reason of their disabilities." Filing 1 at 81-82, ¶ 275 (emphasis added).

Likewise, in their brief in opposition to Defendants' Motion to Dismiss, (Filing 41), Plaintiffs maintained their claims against the BOP Defendants were ripe for review because, "Plaintiffs are currently subject to the *BOP's multi-step process* for assessing *prisoners* and preparing them for parole consideration." Filing 41 at 3 (emphasis added). Plaintiffs went on in great detail to describe that "multi-step process for assessing *prisoners and preparing them for parole consideration.*" *See* Filing 47 at 7-10 (emphasis added). At no time in that description of the "multi-step process" do Plaintiffs mention preliminary or probable cause hearings for parole revocation, or the actual parole revocation hearings themselves. Instead, Plaintiffs asserted: "All named Plaintiffs meet the essential *eligibility requirements for parole consideration* and are therefore 'qualified' to participate in BOP's parole process." *Id*.

at 8. Until their brief in opposition here, Plaintiffs' only claims against the BOP or Micek have been related to Plaintiffs' pursuit of being granted parole—not after.

The clearest indication that Plaintiffs' claims only relate to their pursuit of being paroled is their identical allegations against the Board of Parole Defendants. Sabata,[1] Cardeilhac,[2] Galle,[3] Norris,[4] R.P,[5] Reeves,[6] and Sweetser[7] all contend that they have a disability, intend to request a parole hearing once eligible to do so, and will require accommodations in order to complete the parole hearing process. It is upon these allegations that Plaintiffs base their claims against Micek and the Board of Parole. There is little doubt Plaintiffs' newfound assertion that "[t]he parole processes at issue in this case are not limited to the hearings that lead up to a prisoner's first release from prison," Filing 238 at 8, was never at issue or complained of in this case. Julie Micek, who has absolutely nothing to do with Plaintiffs' claims, should be dismissed

## II.    No Plaintiff, on the basis of a disability, has been excluded from participation in or denied the benefits of a service, program, or activity by Micek or the Division of Parole Supervision.

The undisputed facts show that Micek has not, on the basis of disability, denied any Plaintiff the benefits of a service, program, or activity and Micek is entitled to a judgment as a matter of law. Under Title II, a plaintiff must show that 1) he or she

---

[1] Filing 1 at 4, ¶ 13.
[2] *Id*. at 5-6. ¶ 18.
[3] *Id*. at 9, ¶ 30.
[4] *Id*. at 14, ¶ 46.
[5] *Id*. at 15, ¶ 49.
[6] *Id*. at 16, ¶ 55.
[7] *Id*. at 19, ¶ 61.

is a qualified individual with a disability; 2) he or she was excluded from or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits or discrimination was because of his or her disability. 42 U.S.C. § 12132; *Layton v. Elder,* 143 F.3d 469, 472 (8th Cir. 1997); *Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir. 1999); *see also* 29 U.S.C. § 794(a) (section 504).

Again, until their brief in opposition, Plaintiffs failed to allege, even broadly, how they have been "excluded from or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against" by Micek or the Division of Parole Supervision. Specific to Sabata, her only allegation with respect to parole is that she "intends to request a parole hearing once eligible to do so, but she will require accommodations in order to complete the parole hearing process." Filing 1 at 4, ¶ 13. And Sabata's grant of parole is evidence she was not denied parole because of her disabilities. *Compare* Filing 237-4 at 6 (Sabata granted parole), *with* Filing 1 at 63, ¶ 204 (allegation Plaintiffs risk parole denial solely because of disabilities).

Yet, Plaintiffs now claim that Sabata was somehow excluded from benefits, programs, services, and activities of the Division of Parole Supervision in January of 2018 during her parole revocation. Filing 238 at 1. Plaintiffs do not make clear exactly how Sabata was purportedly excluded from a program, service, or activity because of her disability. Instead, Plaintiffs focus on 1) the fact she did not have counsel during the preliminary parole revocation hearing, and 2) the reason why Sabata's parole was

revoked.

A. Right to retain or request the appointment of counsel.

Plaintiffs focus on the fact that during the parole revocation process, individuals may independently retain counsel or request that counsel be appointed to them if they meet certain eligibility requirements. Plaintiffs assert that "the Division of Parole Supervision conducted a preliminary revocation hearing during which Plaintiff Sabata was not represented by counsel, and in which she was not adequately informed of her right to request counsel." *Id*. at 13. However, Sabata's allegation that "[t]hey did not inform me I could have a lawyer appointed to help me fight the parole revocation charges," Filing 237-4 at 2, ¶ 13, is false.

As described above, Sabata was notified of the preliminary hearing and advised of her rights including the right to be represented and retain counsel at her own expense, and that she was entitled to request the appointment of counsel if she met certain eligibility requirements. Filing 237-5 at 4. This advisory explicitly states how to request state appointed counsel. *Id*. This notice and advisement was again given to Sabata at her preliminary hearing on January 4, 2018. *Id*. at p. 10, *see also id*. at 7. "Hannah Sabata received written notice of this hearing on December 28, 2017, and declined the appearance of adverse state's witnesses. Ms. Sabata did not request the service of state appointed counsel either by letter or at the time of the hearing. The Hearing Officer explained Ms. Sabata's rights as well as revocation procedures." *Id*. Further, Sabata signed the "Parole Violation Advisory of Rights, Waiver & Notification" on December 28, 2017, which explicitly informs her that she

18

may retain counsel or request one to be appointed to her if eligible. Filing 237-5 at 4.

Plaintiffs also generally assert that "Sabata is a person with a disability. She has impairments arising from multiple serious mental illnesses." Filing 238 at 8, ¶ 16. Yet, Plaintiffs fail to show, or even explain how her alleged disability prevented her from reading or understanding her rights as described in her parole revocation packet. Instead, Plaintiffs simply state that "the Division of Parole Supervision is responsible for disability accommodations in certain parole proceedings at issue [in] this case." Filing 238 at 12. Again, Plaintiffs' claims have nothing to do with parole revocation or the process after an individual has been release on parole. The fact the Division of Parole Supervision may be responsible for providing accommodations during preliminary revocation hearings does not dispute Micek's assertion that she has not excluded any Plaintiff—including Sabata—from participation in or denied the benefits of a service, program, or activity because of a disability.

B. Sabata's parole revocation.

Plaintiffs suggest Sabata's parole was revoked because she expressed suicidal ideation to the staff at the reentry facility, and the facility was not equipped to handle her needs. Filing 238 at 12. Not only do revocation decisions have nothing to do with Micek, but this characterization of why Sabata's parole was revoked is incomplete and misleading.

First, the Division of Parole Supervision does not revoke an individual's parole. That decision is entirely up the Board of Parole. *See* Neb. Rev. Stat. §§ 83-1,121-123. Second, as demonstrated by Plaintiffs' own evidence in Filing 237-5 at 1, Sabata's

parole was revoked because she violated the agreed upon Special Conditions stipulation when she was removed from the Living Water Rescue Mission for failing to follow the rules of the facility and unsuccessful completion of the program. Filing 237-5 at 1.

As described earlier, Sabata had failed to follow multiple staff directives to stop attempting to contact an individual that she had previously been advised not to contact. *Id*. The individual Sabata continued to attempt to contact told Sabata's parole officer and Living Water staff that he did not want any communication with her. *Id*. Living Water staff continued to direct her not to contact this individual, however she continued to make attempts. *Id*. When staff addressed the situation with Sabata, she became distressed and made multiple comments of wanting to end her life. *Id*. at p. 7. She was placed in Emergency Care to address her mental health needs. *Id*. She was placed in Emergency Care to address her mental health needs. *Id*. On December 20, 2017, Officer Divas, along with Division of Parole Supervision Social Worker, Shay Piel, visited Sabata at the hospital. *Id*. During the hospital stay, Officer Divas maintained contact with the staff at Living Water Rescue Mission to keep them apprised of Sabata's status. *Id*. Then, after all of the above, on December 22, 2017, Officer Divas was advised by the program that were no longer in a position to provide a residence or services to Sabata.

At Sabata's parole revocation hearing on January 16, 2018, "it was decided by unanimous vote of the Board that [her] parole be revoked based upon *[her] admission* that she violated the Special Conditions stipulation when on or about December 22,

2017, [she] was removed from the Living Water Rescue Mission for *failing to follow the rules of the facility* and *unsuccessful completion of the program*." Filing 245-5 (emphasis added). The Special Conditions which Sabata had agreed to when first paroled included, 1) Follow Rules of Transitional Living Facility: Living Water Rescue Mission, and 2) Successfully Complete Program. Filing 245-3 at 2. Despite Plaintiffs' characterization, Sabata's parole was revoked because she failed to follow the rules of the Living Water Rescue Mission when she continually disobeyed multiple staff directives to stop attempting to contact an individual that she had previously been advised not to contact.

Still, Plaintiffs maintain there is a triable issue of fact regarding the adequacy of Division of Parole Supervision policies on disability accommodation in parole proceedings. Filing 238 at 12. Even if this were an issue in the case, the evidence in the record shows accommodations are and would be readily made available for individuals with disabilities during such preliminary parole revocation hearings:

> **Q.** Going back a little bit at the preliminary hearings, I understand the Board of Parole is not present, but do you know if for instance sign language interpreters are provided for deaf parolees at those hearings?
>
> **A.** If they are and they want them and they need them, yes, they would be provided.

Filing 237.2 at 9, Cotton Deposition at 73:19-25.

The evidence also shows that when a notice of a parole revocation hearing is sent to an individual, the parole officer will sit down with them and go over the packet, including the advisory of rights, and provide any accommodations which are needed.

**Q.** Okay. So when the Board of Parole sends a -- the notice of parole hearing, for instance, to the prisoner or the packet or the handbook, at that point, it is up to the NDCS to provide accommodations to that individual to understand that material?

**A.** For the handbook, yes. But for the packet, the parole officer will sit down with them and go over that packet.

**Q.** Okay. And can the -- will the parole officer provide any accommodations while they're going over it?

**A.** If they need to, absolutely.

Filing 237.2 at 13, Cotton Deposition at 103:10-21.

Since this is a motion for summary judgment, Plaintiffs can no longer rely on their mere allegation questioning the adequacy of the Division of Parole Supervision's policies and practices on disability accommodations. And Plaintiffs have failed to present any evidence showing that Plaintiffs, because of a disability, have been denied or excluded from participation of a program, service, or activity by Micek or the Division of Parole Supervision.

Sabata's parole revocation does not help them since parole revocation is not at issue and her revocation does not show a violation of either the ADA or Rehabilitation Act. . Moreover, the decision to revoke Sabata's parole was made by the Board of Parole, not Micek or the Division of Parole Supervision. In sum, Plaintiffs' evidence clearly fails to establish an issue of material fact.

### III.   Micek does not maintain the records or files relied upon by the Board of Parole when it considers an inmate for parole.

Plaintiffs contend, "The Board of Parole's lack of a tracking system for parole proceedings is, by statute, the responsibility of the Division of Parole Supervision,

under the authority of Defendant Micek." Filing 238 at 14. Although Micek and the Division of Parole Supervision are responsible for the maintenance of all records and files associated with the Board of Parole, such records only relate to the parole supervision of individuals once they are released on parole. Filing 245-1 at 2, ¶ 6. In contrast, the records to which the Board of Parole relies on to conduct key reviews, prisoner interviews, and hearings in consideration of whether an inmate should be granted or denied parole are provided by NDCS. *Id.* at ¶ 7; Filing 245-2 at 2, ¶ 9.

Pursuant to Nebraska law, the Board of Parole has the power to direct the Director of Correctional Services to keep records concerning committed offenders which the Board deems pertinent to its functions. Neb. Rev. Stat. § 83-197. As such, when the Board of parole conducts key reviews, prisoner interview, and hearings in consideration of whether an inmate should be granted parole, members of the Board rely on NDCS records. Filing 245-2 at 2, ¶ 9. These records include an inmate's presentence investigation report, misconduct reports, employment within the institution, program participation, risk assessments, decision guidelines, and classification and recommendations by NDCS. *Id.* Because Micek does not maintain or provide the Board of Parole with access to NDCS records, any alleged deficiency in those records of inmates within the custody of NDCS cannot be imputed to Micek. Even if Plaintiffs' stated a cognizable claim with respect to the lack of a tracking system for inmates seeking parole, Plaintiffs' requested relief is not within the scope of Micek's power and authority.

Regardless, Plaintiffs failed to present any evidence that the lack of a formal

tracking system used by the Board of Parole, Micek, or the Division of Parole Supervision has excluded any Plaintiff, because of a disability, from participating in a program, service, or activity. Once again, the instant motion is for summary judgment, not a motion to dismiss. Plaintiffs' generalized allegation that the failure to track a disability accommodation need will "inevitably cause[] needless delays in future proceedings" does not create a triable issue of fact. Filing 238 at 13.

## CONCLUSION

For the reasons set forth above, and those in Micek's initial brief at Filing 225, Micek's Motion for Summary Judgment should be granted and she should be dismissed from this case.

Submitted February 11, 2019.

JULIE MICEK, Defendant.

By:    DOUGLAS J. PETERSON
Attorney General of Nebraska

*s/ Scott R. Straus*
Scott R. Straus, #26475
Ryan S. Post, #24714
David A. Lopez, #24947
Danielle L. Rowley, #25505
Katherine O'Brien, #25993
Assistant Attorneys General

Office of the Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-3833
scott.straus@nebraska.gov
Attorneys for Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2019, I electronically filed the foregoing brief in support for motion for summary judgment with the Clerk of the United States District Court for the District of Nebraska, causing notice of such filing to be served upon all parties registered on the CM/ECF system.

By:    *s/ Scott R. Straus*