IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HANNAH SABATA; DYLAN CARDEILHAC; JAMES CURTRIGHT; JASON GALLE; RICHARD GRISWOLD; MICHAEL GUNTHER; ANGELIC NORRIS; R. P., a minor; ISAAC REEVES; ZOE RENA; and BRANDON SWEETSER; on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES; SCOTT FRAKES, in his official capacity as Director of the Nebraska Department of Correctional Services; HARBANS DEOL, in his official capacity as Director of Health Services of the Nebraska Department of Correctional Services; NEBRASKA BOARD OF PAROLE; JULIE MICEK, in her official capacity as the Board of Parole Acting Parole Administrator; and DOES, 1 to 20 inclusive;<br><br>Defendants. | 4:17CV3107<br><br>ORDER |

This matter is before the Court on the Motion to Quash (Filing No. 108) filed by a nonparty, Marshall Lux, Public Counsel for Nebraska ("Public Counsel"). The Public Counsel requests that the Court quash the subpoena duces tecum served on him by Defendant, Nebraska Department of Correctional Services ("NDCS"), because the documents sought by the subpoena are not relevant to this litigation and are privileged under Nebraska law. For the following reasons, the Court will grant the motion.

**BACKGROUND**

Plaintiffs, inmates within the custody and control of the NDCS, filed this proposed class action on August 15, 2017, against Defendants NDCS and its administrators and medical staff, asserting violations of the plaintiffs' civil and constitutional rights. Plaintiffs' claims arise out of their allegations that Nebraska state prisons are "overcrowded, under-resourced, and

understaffed, and that prisoners are "consistently deprived of adequate health care, including medical, dental, and mental health care, and denied accommodations for their disabilities." (Filing No. 1 at p. 4). Plaintiffs are represented by a number of attorneys from various firms and organizations, including the National Prison Project of the American Civil Liberties Union ("ACLU"), the National Association of the Deaf Law & Advocacy Center, and the Nebraska Appleseed Center. The NDCS seeks documents from the office of the Public Counsel regarding communications with these firms and organizations. See Filing No. 108-1.

The Nebraska legislature established the office of Public Counsel to perform certain duties, including investigating "any administrative act of any administrative agency," such as the NDCS. See Neb. Rev. Stat. §§ 81-8,241 and 81-8,245 (R.S.Supp. 2018). In addition, the Inspector General of the Nebraska Correctional System ("Inspector General") was created within the office of the Public Counsel to conduct "investigations, audits, inspections, and other reviews of the Nebraska correctional system." Neb. Rev. Stat. § 47-904(1)(R.S.Supp. 2018); see also Neb. Rev. Stat. § 81-245(9). The Inspector General's duties include investigating "[a]llegations or incidents of possible misconduct, misfeasance, malfeasance, or violations of statutes or of rules or regulations of the department by an employee of or a person under contract with the department . . ." and "[d]eath or serious injury in private agencies, department correctional facilities, and other programs and facilities licensed by or under contract with the department." Neb. Rev. Stat. § 47-905(1)(a)-(b).

The subpoena served by the NDCS on the Public Counsel requests "[a]ll communications and contents of such communications," including emails and messages "sent by or from" the office of Public Counsel (including the Inspector General) to Plaintiffs' counsel and their respective firms and organizations. The subpoena states the request "is limited in scope to communications or contents of such communications sent from January 1, 2014, to the present" regarding any of the individually named plaintiffs. (Filing No. 108-1 at p. 3). The Public Counsel provided the Court with a Privilege Log (Filing No. 110-4) listing eight emails either from the Public Counsel or the Inspector General with ACLU counsel as either an addressee or a recipient. The Public Counsel represents the eight emails are all the documents responsive to the NDCS's subpoena. (Filing No. 110-1 at p. 7). The Public Counsel has filed the instant motion to quash the subpoena for two reasons: (1) the NDCS has not made a threshold showing of

relevance of the requested documents and (2) the requested documents are privileged under Neb. Rev. Stat. §§ 81-8,253 and § 47-916.

## ANALYSIS

**A. Relevance**

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 and is subject to the rules that apply to other methods of discovery." *Quiles v. Union Pac. R.R. Co.*, No. 8:16CV330, 2018 WL 737403, at *1 (D. Neb. Feb. 6, 2018)(quoting *Desert Orchid Partners, LLC v. Transaction System Architects, Inc.*, 237 F.R.D. 215, 217 (D. Neb. 2006)). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "When a party issuing a subpoena makes a threshold showing that the discovery sought is relevant, a person or company resisting the subpoena bears the burden of showing that its objections are valid by providing specific explanations or factual support as to how the requested information is improper." *McGehee v. Nebraska Dep't of Corr. Servs.*, No. 4:18CV3092, 2019 WL 266423, at *2 (D. Neb. Jan. 17, 2019)(citing *Kinzer v. Remington Arms Co.*, No. 8:11-cv-75, 2011 WL 1659883, at *3 (D. Neb. May 3, 2011)). The scope of relevant discovery is extremely broad. "Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." *Met-Pro Corp. v. Industrial Air Technology, Corp.*, No. 8:07CV262, 2009 WL 553017, * 3 (D. Neb. March 4, 2009).

The Public Counsel asserts that the NDCS has not made a threshold showing of relevance for the requested documents, which narrowly request "communications between the Public Counsel or IG and the lawyers representing the plaintiffs regarding the plaintiffs themselves." (Filing No. 109 at p. 14). The NDCS argues that its request for "records relating to complaints any of the named Plaintiffs have had regarding the [NDCS]" is facially relevant. Considering that the scope of relevant discovery is extremely broad, the Court finds the NDCS has made a threshold showing that the requested documents are relevant to this litigation. The office of Public Counsel, which includes the Inspector General, is tasked with investigating the NDSCS with allegations or incidents of possible misconduct, violations of rules and regulations, and

3

death or serious injury at the correctional facility. See Neb. Rev. Stat. §§ 81-8,241, 81-8,245, and 47-904(1). Communications from the Public Counsel or the Inspector General to counsel representing the individually named plaintiffs clearly would encompass information relevant to Plaintiffs' claims against the NDCS. See *E.E.O.C. v. Woodmen of the World Life Ins. Society*, 2007 WL 1217919 at *1 (D. Neb. Mar. 15, 2007)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)("Relevancy is to be broadly construed for discovery issues" and "encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'").

### B. Privilege

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), the court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). The Public Counsel asserts a privilege against being compelled to produce the documents requested by the NDCS based on his status as Nebraska's Public Counsel. (Filing No. 108)(citing *Tlamka v. Serrell et al.*, 4:97CV3212, (D. Neb. Feb. 6, 2002)(Jaudzemis, M.J.)(unpublished)); Filing No. 110-2. The Public Counsel's motion is based on Neb. Rev. Stat. § 81-8,253, which provides, "Neither the Public Counsel nor any member of his staff shall be required to testify or produce evidence in any judicial or administrative proceeding concerning matters within his official cognizance[.]" Neb. Rev. Stat. § 81-8,253. Similarly, with respect to the Inspector General, the statutes provides, "Neither the Inspector General nor any member of his or her staff shall be required to testify or produce evidence in any judicial or administrative proceeding concerning matters within his or her official cognizance[.]" Neb. Rev. Stat. § 47-916. The Public Counsel is "an officer of the legislative branch of state government." *State ex rel. Shepherd v. Nebraska Equal Opportunity Comm'n*, 557 N.W.2d 684, 691 (Neb. 1997).

Although the Public Counsel's claim of privilege arises out of Nebraska state statutes, "[a]ll evidentiary privileges asserted in federal court are governed, in the first instance, by Federal Rule of Evidence 501." *United States v. Ghane*, 673 F.3d 771, 780 (8th Cir. 2012). The fact that a state statute "creates a privilege and a testimonial immunity does not automatically mean that this Court can recognize them." *Shabazz v. Scurr*, 662 F. Supp. 90, 91-92 (S.D. Iowa 1987). The scope of an evidentiary privilege in federal court is governed by "the principles of

4

common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. "[E]videntiary privileges 'are not lightly created,'" and parties that seek to create a new privilege "must overcome the significant burden of establishing that 'permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 793 (8th Cir. 1997)(quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974) and citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

This Court has previously accepted a federal evidentiary privilege for the office of Public Counsel and quashed a subpoena to the Public Counsel on that basis. See *Tlamka v. Serrell et al.*, 4:97CV3212 (D. Neb. Feb. 6, 2002)(Jaudzemis, M.J.)(unpublished). In doing so, Magistrate Judge Jaudzemis found persuasive guidance in *Shabazz v. Scurr*, 662 F. Supp. 90, 91-92 (S.D. Iowa 1987), wherein the Southern District of Iowa found that a limited federal privilege existed for a prison ombudsman in light of the unique function of the office and the Iowa statutes governing the privilege. Similar to the Office of Public Counsel, the prison ombudsman in *Shabazz* was authorized to investigate complaints against a state agency or official and to issue recommendations to the executive or legislative branch. The district court in *Shabazz* recognized that "Courts have a special interest in protecting the [prison ombudsman] office's problem-solving function" and that public policy favored respecting the confidentiality of communications to facilitate the office's problem-solving purpose. See *id.* at 92.

As stated above, the Nebraska legislature established the office of Public Counsel to investigate "any administrative act of any administrative agency," such as the NDCS. "The statutes governing Public Counsel require a significant degree of cooperation in any such investigation." *Tlamka v. Serrell et al.*, 4:97CV3212; Filing No. 110-2 at p. 1. To that end, it is a Class II misdemeanor for a person to "willfully obstruct[] or hinder[] the proper exercise of the Public Counsel's functions," or to "willfully mislead[] or attempt[] to mislead the Public Counsel in his inquiries[.]" Neb. Rev. Stat. § 81-8,254. The legislature also clearly stated its intent to prohibit the Public Counsel and the Inspector General from being "required to testify or produce evidence in any judicial or administrative proceeding concerning matters within his official cognizance[.]" See Neb. Rev. Stat. §§ 81-8,253 & 47-916. According to the Public Counsel, since the inception of the Office of Public Counsel thirty-seven years ago, the Nebraska Attorney General has routinely recognized this statutory evidentiary privilege and opposed every

5

subpoena served on the Public Counsel. (Filing No. 109 at pp. 4-5). The Public Counsel also asserts that confidentiality is necessary and important to carry out his investigatory duties. The Public Counsel believes that, if his office is unable "to assure complainants that communications related to their complaints and the work of my office are confidential," the office would receive fewer complaints about administrative agencies because complainants would fear retaliation. (Filing No. 110-1 at p. 4). The Court agrees with the Public Counsel that maintaining confidentiality of communications is important to carrying out the office's investigatory duties and ensuring that potential complainants come forward without fear of retaliation. See also *Shabazz*, 662 F. Supp. at 92 ("[P]reserving the confidentiality of communications received during investigations helps to ensure that those communications will take place."). In consideration of the "unique function" and purpose of the office of the Public Counsel, this Court will recognize the evidentiary privilege afforded to the office by Nebraska state statute.

The NDCS does not argue against this Court recognizing the evidentiary privileges set forth in Neb. Rev. Stat. §§ 81-8,253 & 47-916; instead, the NDCS argues that the requested documents are not privileged under those statutes because they do not concern "matters within [the] official cognizance" of the Public Counsel or the Inspector General. The NDCS maintains that "outbound transmission of records from the Nebraska Ombudsman . . . to private lawyers preparing for litigation against the State" are not matters within the office of Public Counsel's "official cognizance." (Filing No. 130 at pp. 9-10). The Court does not construe the statute so narrowly.

The Public Counsel has a list of enumerated powers, including the power to "Prescribe the methods by which complaints are to be made, received, and acted upon; determine the scope and manner of investigations to be made; and, . . . determine the form, frequency, and distribution of his or her conclusions, recommendations, and proposals;" inspect the premises of administrative agencies; request and inspect documents from administrative agencies; issue subpoenas; undertake or participate in studies or inquiries to "enhance knowledge about or lead to improvements in the functioning of administrative agencies;" and to carry out his duties under the Office of Inspector General. See Neb. Rev. Stat. § 81-8,245. The Inspector General is tasked with investigation of "violations of statutes or of rules or regulations of the department by an employee of or a person under contract with the department or a private agency; and "Death or serious injury in . . . department correctional facilities[.]" Neb. Rev. Stat. § 47-905(1). The

evidentiary privilege afford to the Public Counsel and Inspector General extends to evidence and testimony "concerning matters within his official cognizance[.]" As the Public Counsel points out, "The privilege statutes make no distinction between evidence of 'inbound' and 'outbound' communications. Rather, the scope of the privileges is defined by the nature of the 'matter' the Public Counsel and [Inspector General] deal with," which in general, would relate to the enumerated powers and duties above. (Filing No. 133 at p. 4).

The privilege log (Filing No. 110-4) submitted by the Public Counsel indicates that the documents responsive to the subpoena concern "matters within his official cognizance." The eight items in the privilege log are emails either from the Public Counsel or the Inspector General with ACLU counsel as either an addressee or a recipient. The email replies concern ACLU counsel's request for documents that an individually named incarcerated Plaintiff had previously submitted to the Public Counsel; three replies concern ACLU counsel's inquiry about records that another Plaintiff had previously provided to the Public Counsel; one reply is in response to ACLU counsel's concerns related to a Plaintiff's segregation/solitary confinement; two replies relate to a referral ACLU counsel made on behalf of one of the Plaintiffs about solitary confinement; and one reply instructs the Public Counsel's staff to open an investigation file for one of the Plaintiffs showing ACLU counsel as referring party. (Filing No. 110-4). These replies concerning individuals incarcerated at the NDCS and potential complaints and investigations related to those individuals are matters that clearly fall within the "official cognizance" of the Public Counsel and Inspector General. See Neb. Rev. Stat. § 81-8,245. Accordingly, neither the Public Counsel and Inspector General shall be required to produce documents in response to the NDCS' subpoena. See Neb. Rev. Stat. §§ 81-8,253 & 47-916.

Upon consideration,

**IT IS ORDERED:** Marshall Lux, Public Counsel's, Motion to Quash (Filing No. 108) is granted.

Dated this 22nd day of February, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge