IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HANNAH SABATA, et al, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, et al,<br><br>Defendants. | 4:17CV3107<br><br>ORDER |

This matter is before the Court on the Defendants' Motion to Strike Expert Declarations ([Filing No. 351](#)). Defendants move to strike the entire expert declarations of Margo Schlanger ([Filing No. 249-50](#)), Eldon Vail ([Filing No. 249-47](#)), Craig Haney ([Filing No. 249-42](#)), and Pablo Stewart ([Filing No. 249-38](#)), and portions of the expert declarations of Jay Shulman ([Filing No. 249-53](#)) and Marc Stern ([Filing No. 249-58](#)) offered by Plaintiffs in support of their Motion for Class Certification ([Filing No. 247](#)). Defendants argue the above expert testimony should be stricken because it does not meet the requirements of Rule 702 of the Federal Rules of Evidence and *[Daubert v. Merrell Dow Pharms., Inc.](#)*, 509 U.S. 579 (1993), nor do the opinions aid the Court's determination of the requirements of Rule 23 of the Federal Rules of Civil Procedure. For the following reasons, the Court will deny the motion.

### BACKGROUND

Plaintiffs, inmates within the custody and control of the NDCS, filed this proposed class action against Defendants NDCS and its administrators and medical staff, asserting violations of the plaintiffs' civil and constitutional rights. Plaintiffs' claims arise out of their allegations that Nebraska state prisons are "overcrowded, under-resourced, and understaffed, and that prisoners are "consistently deprived of adequate health care, including medical, dental, and mental health care, and denied accommodations for their disabilities." ([Filing No. 1 at p. 4](#)). Plaintiffs have now moved for class certification and request that the Court certify an "NDCS Class" comprised of "all persons who are now, or will in the future, be subjected to the health care (including medical, mental health and dental care) policies and practices of NDCS." The plaintiffs also seek

certification of two subclasses, an "Isolation Subclass" comprised of "all NDCS prisoners who are now, or will in the future be, subject to conditions of confinement that provide limited contact with other prisoners, strictly controlled movement while out of cell, and out-of-cell time of less than twenty-four hours per week," and a "Disability Subclass" comprised of "all persons with disabilities who are now, or will in the future be, confined at any NDCS facility." (Filing No. 247).

Plaintiffs offered several expert declarations in support of their motion for class certification. Defendants seek to strike the entirety of four expert declarations, and portions of two additional declarations, described below:

- Margo Schlanger, a Professor of Law at the University of Michigan, retained to provide her opinion on the Nebraska state prison system's "disability-related policies, practices, and procedures." In Professor Schlanger's 53-page declaration, she describes her qualifications, experience, and factual basis for her opinions, and states her partial and preliminary opinion that "NDCS systematically fails to provide prisoners with disabilities with equal access to NDCS services, programs, and activities, and fails to communicate effectively with prisoners with communications-related disabilities." (Filing No. 249-50). Plaintiffs use Professor Schlanger's opinion to establish NDCS' "complete control" over disability-related accommodations (Filing No. 250 at pp. 27-32) and the Nebraska Board of Parole's "centralized system" for administering parole reviews (Filing No. 250 at pp. 32-33), and to establish numerosity (Filing No. 250 at p. 37).

- Eldon Vail, former correctional administrator, retained to offer his opinions "on the effects of overcrowding and understaffing in the [NDCS], and on whether or not the overcrowding and understaffing at NDCS impact and/or create dangerous conditions for their prisoner population." Vail describes his qualifications, experience, and data relied on to provide his opinion that the NDSC's "policies and practices create a substantial risk of harm to all NDCS prisoners in the form of exposure to dangerous segregation (restrictive housing) units," which risk of harm is "common to all NDCS prisoners, and can be remedied by system-wide changes in the way NDCS manages and staffs its institutions, and in the way it uses segregation (restrictive housing)." (Filing No. 249-47). Plaintiffs use Vail's declaration to establish commonality. (Filing No. 250 at p. 41).

- Craig Haney, M.A., Ph.D, Professor of Psychology and the UC Presidential Chair at the University of California, Santa Cruz, retained to provide opinions on the "negative psychological consequences of solitary or isolated confinement" (i.e., "restrictive housing"), whether/how those consequences are exacerbated for prisoners suffering from serious mental illness, and the extent to which NDSC prisoners are placed at risk of

2

psychological harm from solitary-type confinement. Haney describes his qualifications, experience, and facts relied on to reach his opinions, including his NDCS facility tours and face-to-face interviews with a sample of NDCS prisoners. Dr. Haney offers his opinion that "the conditions of confinement in the NDCS isolation units . . . are exactly the type of conditions that my own experience and study and decades of scientific research have found to place all prisoners at significant risk of serious harm." (Filing No. 249-42 at pp. 8-9). Plaintiffs use Haney's declaration to establish commonality. (Filing No. 250 at p. 41).

- Pablo Stewart, M.D., a board-certified psychiatrist retained to opine on the NDCS's policies and practices regarding mental health services provided to its prisoners. Dr. Stewart bases his opinions on NDCS's policies, the named plaintiffs' medical files, deposition transcripts of NDCS officials, and his tours of six NDCS facilities and review of files of random individual prisoners receiving psychiatric care. Dr. Stewart offers a preliminary opinion that "NDCS lacks the systems and resources needed to ensure that prisoners with mental illness are identified and treated in the manner necessary to prevent serious harm or death," and that "the shortage of mental health staff, structural deficiencies in the provision of mental health treatment and medications are statewide systemic problems." (Filing No. 249-38).

- Jay Shulman, DMD, MA, MSPH, retained to provide an opinion as to "whether there are current systemic deficiencies in the dental care provided by the [NDCS] that are amenable to a common remedy that will reduce the risk of harm to prisoners." Dr. Shulman is of the opinion that "the consistently inadequate dental care documented in the records I reviewed is attributable to systemic problems caused by inadequate dentist staffing and inadequate policies and procedures in the NDCS's Dental Department." (Filing No. 249-53).

- Marc Stern, M.D., MPH, retained to evaluate the health care services provided by the NDCS to its prisoners, and "whether and, if so, how the health care policies and practices of NDCS impact all plaintiffs, putting them all at a substantial risk of serious harm, regardless of their individual medical histories." (Filing No. 249-58).

Broadly speaking, Defendants argue that the above declarations should be stricken in whole or in part because they contain legal conclusions, irrelevant and unsupported statements, and assumptions, are based on insufficient facts and/or data and flawed methodology, and because they offer opinions on the merits of the case rather than class certification. Defendants additionally argue that many of the experts offer opinions outside of their qualifications and expertise. See generally, Filing No. 353.

3

## ANALYSIS

Rule 702 of the Federal Rules of Evidence provides that an expert witness may offer an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. *Daubert* instructs the district court to serve as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. However, this "gatekeeping function" applies to evidence "submitted to the jury" so "'[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'" *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (quoting *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)). Because "[t]he main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony[,] [t]hat interest is not implicated at the class certification stage where the judge is the decision maker." *Id.* Instead, at the class certification stage, the court should conduct a "focused" *Daubert* analysis that "scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Id.* at 614. Therefore, the court's review of expert disputes is "properly limited to whether, if [the plaintiffs'] basic allegations [are] true, common evidence could suffice, given the factual setting of the case, to show classwide injury." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005); accord *In re Zurn Pex*, 644 F.3d at 611.

Defendants argue that the considerations supporting the "focused" *Daubert* analysis set forth in *In re Zurn Pex* only apply in cases where discovery has been bifurcated into separate class certification and merits stages, which the Court ultimately did not order in this case. (Filing No. 378 at p. 2). However, the Court did not bifurcate discovery largely because the Court and parties recognized that class certification questions and merits questions would frequently overlap, leading to more disputes and inefficiencies in the discovery process if a strict bifurcation schedule was attempted. (Filing No. 80; Filing No. 95). The Court and parties generally proceeded with the understanding that class certification discovery would take priority over merits discovery

where possible, and further discovery would continue beyond the class certification stage. "Class certification 'is inherently tentative,' . . . and may 'require revisiting upon completion of full discovery.'" *In re Zurn Pex*, 644 F.3d at 613 (internal citations omitted). As Plaintiffs' experts stated in their declarations, their opinions were "partial and preliminary" based on the information currently available to them, but recognized that their opinions may be further developed or supplemented with further discovery. See, e.g., Filing No. 249-50 at p. 5 - Schlanger Declaration; *In re Zurn Pex*, 644 F.3d at 613 ("Expert opinions may have to adapt as such gaps are filled by merits discovery, and the district court will be able to reexamine its evidentiary rulings."). Therefore, the reasoning behind *In re Zurn Pex*'s focused *Daubert* analysis is equally applicable in this case.

In this case, the Court finds that the expert opinions offered by Margo Schlanger, Eldon Vail, Craig Haney, Pablo Stewart, Jay Shulman, and Marc Stern are sufficiently reliable in light of the available evidence and purpose for which they were offered. Each declaration sets forth the expert's qualifications, experience, and facts and data upon which the expert's opinions were based. As stated above, at the class certification stage the Court is to "examine the reliability of the expert testimony in light of the existing state of the evidence and with Rule 23's requirements in mind." *In re Zurn Pex*, 644 F.3d at 612. The proponent of class certification must demonstrate that the Rule 23(a) requirements of "numerosity, commonality, typicality, and fair and adequate representation" exist and that one of the three subsections of Rule 23(b) have been met. See *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013). The Court concludes that Plaintiffs' experts' opinions assist in this determination. In particular, the experts' opinions relate to the commonality requirement, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011), and that a "classwide proceeding will 'generate common answers apt to drive the resolution of the litigation.'" *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011) (quoting *Dukes*, 564 U.S. at 350). The expert opinions also relate to typicality, which "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory," *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982) (quotation marks and citation omitted), and means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d

5

825, 830 (1977)).  Although Defendants suggest that Plaintiffs' experts' opinions are deficient because they do not address all of the requirements of Rule 23(a), (Filing No. 353 at pp. 4, 10, 22, 34, 39), there is no such requirement that the experts do so.

Defendants further argue that the expert declarations should be stricken because they are based on insufficient or inadequate data and facts, including some opinions offered without the expert visiting a Nebraska prison or citing Nebraska-specific statistics.  (Filing No. 353 at pp. 6-10, 17).  However, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility."  *In re Zurn Pex*, 644 F.3d at 614 (quoting *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)).  "Such testimony should be excluded only if it 'is so fundamentally unsupported that it can offer no assistance to the jury.'"  *Id.*  Here, the court is equipped to evaluate and determine what weight, if any, to afford relevant expert testimony when determining whether Plaintiffs satisfied the prerequisites of Rule 23 to certify the class and subclasses.  See *id.* at 611; *Blades*, 400 F.3d at 575.

Defendants also seek to strike part or all of the expert declarations because they improperly opine on the merits of the case and do not assist the Court in the class certification determination. (Filing No. 353 at pp. 4, 10, 22, 24, 39-40, 44, 52).  A court properly certifies a class only if, after a "rigorous analysis," the court determines that the prerequisites of Rule 23(a) are met.  *Dukes*, 564 U.S. at 350-51.  This rigorous analysis "will frequently entail 'overlap with the merits of the plaintiff's underlying claim . . . because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (citation omitted).  The Court will be capable of compartmentalizing its class certification analysis from its merits analysis when reviewing the evidence in support and in opposition to class certification, and therefore the expert declarations do not need to be stricken on this basis.  Accordingly,

**IT IS ORDERED** that Defendants' Motion to Strike Expert Declarations (Filing No. 351) is denied.

Dated this 22nd day of August, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge