IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HANNAH SABATA, et al., <br><br> **Plaintiffs,** <br><br> v. <br><br> **NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, et al.,** <br><br> **Defendants.** | Case No. 4:17-CV-3107 <br><br> **SUPPLEMENTAL BRIEF IN OPPOSITION TO CLASS CERTIFICATION** |

Defendants submit this brief in response to Plaintiffs' supplemental brief at Filing 432 and in opposition to Plaintiffs' motion for class certification at Filing 247.

**Argument**

It is Plaintiffs' burden to *prove*, not simply plead, that they have satisfied Rule 23. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). "The reciting of the word 'systemic' in mantra-like fashion throughout the briefing and argument does not overcome the prerequisites to class certification." *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456 (D. Neb. 2007) (internal citations omitted); *see Elizabeth M. v. Montenez,* 458 F.3d 779, 786–87 (8th Cir. 2006) (holding Rule 23(a) requirements not met where the complaint "pleaded a laundry list of desired policy changes, alleged that their injuries are caused by the absence of these policies, and asserted that Rule 23's requirements are satisfied because all class members live in facilities where the desired policies are absent."). Plaintiffs have not proven they have satisfied Rule 23's requirements, and as such class certification should be denied.

1

### I. Plaintiffs seek sweeping and undefined relief.

Plaintiffs request sweeping injunctive relief which, if granted, would require this Court to supervise virtually every aspect of healthcare delivery, disability accommodations, and restrictive housing at NDCS. Filing 432 at 19-20, *citing* Complaint, Filing 1 at 85-87 (seeking relief regarding prison population; staffing; classification and housing; medical, dental, and mental health screening; health care access; health care staffing on routine, urgent, emergency, and specialty care; emergency response; medication and supplies; chronic care; mental health treatment, including medication, therapy, inpatient treatment, suicide prevention, suicide watch, and restraints; environmental conditions; quality assurance; restrictive housing; HIPAA compliance; disability accommodations, identification, tracking, programming, and communication). Aggregating such varied claims with a diverse collection of inmates in a single class action flouts the plain language of Rule 23.

The Eighth Circuit rejects Plaintiffs' approach—and for good reason. Such expansive relief would shift "areas of core state responsibility" to this Court and raise "sensitive federalism concerns." *Horne v. Flores*, 557 U.S. 433, 448 (2009). When the *Elizabeth M.* plaintiffs tried to fit a broad array of disconnected policy claims in a single class action, the Circuit found certification improper because a federal court may not confer upon itself jurisdiction to assert control over a major component of state government. 458 F.3d at 784. Yet Plaintiffs barely mention *Elizabeth M.* because, in their view, merely identifying desired policy changes justifies class treatment. Under their approach, class certification here would be nearly automatic,

and plaintiffs and federal courts would routinely run state agencies. However, "[f]ederal courts operate according to institutional rules and procedures that are poorly suited to the management of state agencies." *Id.*, *quoting Angela R. v. Clinton*, 999 F.2d 320, 326 (8th Cir. 1993). And while the Prison Litigation Reform Act did not alter certification requirements, Plaintiffs' requested relief is contrary to "Congress's desire to get the federal courts out of the business of administering prisons, except where court action is necessary to remedy actual violations of prisoners' constitutional rights." *Gavin v. Branstad*, 122 F.3d 1081, 1090 (8th Cir. 1997).

Plaintiffs provide no clarity on how a sufficiently specific injunction can be conceived and their requested sweeping injunctive relief would also violate Rule 65(d). *See* Filing 317 at 104-107 (discussing failure to satisfy Rule 23(b)(2) and non-compliance with Rule 65(d)). According to Plaintiffs, it is "impossible to outline the precise contours." Filing 360 at 80. When Defendants asked Plaintiffs for more specificity, Plaintiffs responded with no precision. *See* Filing 316-52 at 5-41 (disclaiming any ability to specify which policies they challenge, but citing 78 paragraphs of the Complaint and 310 policies related to health care, and 21 paragraphs of the Complaint and 92 policies related to restrictive housing).

Plaintiffs make no attempt to explain what an injunction in this case would look like, and Plaintiffs' solution to avoid individual issues is to repeat their broad requests for "constitutionally adequate health care, protection from unconstitutional conditions in isolation units, and accommodations for their disabilities." Filing 432 at 1. Yet "a class certification motion requesting injunctive relief that simply prescribes

3

"adequate" or "appropriate" levels of services fails to indicate how final injunctive relief may be crafted to "describe[ ] in reasonable detail . . . the acts . . . required." *Shook v. Board of County Commissioners of County of El Paso, et al.*, 543 F.3d 597, 606 (10th Cir. 2008) (Gorsuch, J.), *citing* Fed. R. Civ. P. 65(d). Instead, such generic requests for "system-wide reforms" would have this Court serve as the primary arena for policy debates and outcomes in Nebraska's prisons and would erase "the essential distinction between judge and executive." *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

Moreover, aggregating a plethora of discrete claims into requests for "system-wide reform" does not satisfy Rule 23(b)(2). All members of a Rule 23(b)(2) class must have sufficiently *similar* claims such that Defendants' conduct is either "unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Plaintiffs cannot avoid this "simply by formulating an injunction at a stratospheric level of abstraction; as we have explained before, 'injunctions simply requiring the defendant to obey the law are too vague to satisfy Rule 65.'" *Shook,* 543 F.3d at 604. In *Shook,* the plaintiffs sought to certify a class of all prisoners suffering from mental illness and to challenge seven alleged practices having to do with mental illness. The denial of certification was affirmed because "Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries," which "must be sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members." *Id., citing In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir.2005); *see also Ebert v. Gen. Mills, Inc.,* 823 F.3d 472, 481 (8th Cir. 2016) ("It is the disparate factual circumstances of

4

class members that prevent the class from being cohesive and thus unable to be certified under Rule 23(b)(2).").

## II. Failure to satisfy Rule 23(a).

Every putative class must withstand a "rigorous analysis" of Rule 23(a)'s requirements: numerosity, commonality, typicality and adequacy. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotations omitted).

### a. No common questions or answers.

Plaintiffs' generic requests for "system-wide reforms" based on alleged "system-wide deficiencies" fail to present a common question of law or fact. "A generalized claim for injunctive and declaratory relief to remedy alleged systematic failures in a state's delivery of legally-mandated services does not present a sufficient 'common question of law or fact' for the purposes of Rule 23(a)(2)." *Bill M. v. Nebraska Dep't of Health & Human Servs. Fin. & Support*, 2005 WL 8175989, at *2 (D. Neb. 2005), *citing J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) ("We refuse to read an allegation of systematic failures as a moniker for meeting the class action requirements. Rule 23(a) requires a common question of law or fact. For a common question of law to exist, the putative class must share a discrete legal question of some kind.").

Applying Plaintiffs' policy preferences might resolve Plaintiffs' policy disagreements with NDCS, but "pivotal to commonality" is "the effect" a policy has on each plaintiff. *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156 (8th Cir. 2017). "Even if [a] decision[] . . . can be considered uniform, the effect is not." *Id*. Advancing

5

such broad questions is not sufficient because the Court will have to consider the unique medical, mental, dental, or disability circumstances of every member to determine whether each member has experienced or is at substantial risk of experiencing an Eighth Amendment or ADA violation. *Ebert*, 823 F.3d at 478 ("[M]erely advancing a question stated broadly enough to cover all class members is not sufficient under Rule 23(a)(2).").

Try as they might, Plaintiffs cannot omit the specificity from the *Postawko v. Missouri Dep't of Corrections* analysis. It was not a green light for a disparate class to challenge disconnected and unspecified policies as part of "institutional reform" litigation. In *Postawko*, the court could specifically identify who (inmates with chronic Hepatitis C), what they need (a single class of drugs estimated to cure over 90% of patients who receive them as treatment), and the policy central to the denial of such need (policy preventing individual medical providers from using their discretion to make individualized treatment decisions and treat with that specific class of drug). 910 F.3d 1030 (8th Cir. 2018). The policy's denial of even the consideration of treatment for most of the class exposed each member to the same constitutional injury. With one stroke, the court could enjoin defendants from denying the consideration of medical treatment of a drug estimated to cure over 90% of the class. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (The common question must "resolve an issue that is central to the validity of each one of the [member's] claims in one stroke."). Unlike *Postawko,* the Plaintiffs have not offered a singular

6

and defined resolution to solve the highly specific claims of each individual in the class or subclasses.

### i. Eighth Amendment medical claims.

The Eighth Amendment requires a prisoner to articulate how a particular deficit creates a substantial risk of serious harm in light of the serious medical needs of that prisoner or group of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The deprivation alleged must be objectively, sufficiently serious," amounting to a "denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The prison official's misconduct must be so egregious that it rises to the level of criminal recklessness. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004). And the Supreme Court has made clear that an Eighth Amendment violation does not arise merely by being incarcerated in a prison with defective systems. *Lewis*, 518 U.S. at 349-51. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation" can be identified. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Accordingly, claims of constitutionally inadequate medical care are *particularly* individualized—both as to the imminence and substantiality of the injury, and the deliberateness of the alleged misconduct.

That is why an Eighth Amendment claim almost always "is one that obviously varies depending on the medical needs of the particular prisoner" and rarely can be asserted classwide for a "medically diverse group." *Rouse v. Plantier*, 182 F.3d 192, 199 (3d Cir. 1999) (Alito, J.). Here, the medical diversity of this class is apparent. Filing 317 at 61-62 (collecting expert individualized analysis of Plaintiffs' claims).

7

And the experts agree the care required for each member varies based on the inmate's individual circumstances. Filing 317 at 63-68.

Plaintiffs fail to present a common question of law or fact that can be answered in a single stroke, because there can be no common answer to questions regarding the seriousness of the medical need and the adequacy of the care for the full range of inmates receiving a comprehensive array of health services. Filing 317 at 14-25 (detailing comprehensive health services). Even assuming that Plaintiffs could allege a system-wide policy deficiency related to medical care, whether it is an Eighth Amendment violation must be analyzed in light of the circumstances unique to each inmate's care. *See M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 254 (5th Cir. 2018) ("[T]he question of whether a particular policy or practice causes a constitutional violation necessarily depends on context—i.e., how that policy or practice is interacting with other . . . conditions.").

The "answer" to an alleged denial of dentures to a particular inmate has nothing to do with tracking individual inmate requests for mental health care, and improving access to emergency care does nothing to organize medical records. This alone demonstrates the lack of commonality. And, while Defendants maintain the varied policies and practices related to the Plaintiffs' varied claims pass constitutional muster, *see* Filing 317 at 61-71, stretching these alleged deficiencies into an amalgamation of policy-based claims does not show that each of the inmates in the class have a serious medical need, that Defendants are deliberately indifferent to it, and that the class faces a substantial risk of serious harm as a result.

8

While Plaintiffs and their experts may allege instances where the provision of medical care to particular inmates may not have been perfect, the record does not establish that inmates, as a class, are systematically being denied medical treatment or having their medical needs ignored. Their proposed class would improperly include "healthy" class members who have "suffered no deprivation of needed medical treatment" and are at no substantial risk of serious harm. *Lewis*, 518 U.S. at 350. Because the proposed class includes healthy inmates who have no claim, there is no commonality. Plaintiffs' attempt to aggregate several amorphous claims of systemic conduct does not overcome the lack of common questions or answers.

### ii. Eighth Amendment restrictive housing claims.

As the Supreme Court has explained, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837. Again, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Landers v. Frakes*, 2019 WL 1517122 (D. Neb. 2019) (internal citations omitted) (collecting restrictive housing Eighth Amendment opinions from the Eighth Circuit).

Under this standard, Plaintiffs have failed to prove this subclass satisfies Rule 23. First, Plaintiffs rely on third-party information they know is outdated to claim the use of restrictive housing has increased and is overused. *Compare* Filing 432 at 11 (claiming 414 inmates in restrictive housing), *with* Filing 352-9 (6-month average of 335 inmates in restrictive housing in 2019). They leave out any reference to the

9

recent Nebraska legislative changes mandating "no inmate who is a member of a vulnerable population shall be placed in restrictive housing." Filing 344-1 at 3 (including those diagnosed with a serious mental illness). And they mischaracterize Frakes' recent testimony on restrictive housing. Filing 372 at 1-3 (extended discussion about new 384-bed high security general population construction, how that facility will function, and how completion of the project is projected to cut the number of inmates in restrictive housing in half); Filing 371-3 at 3 (describing how the new 384-bed unit will provide these high security inmates more out of cell time, more programming, and more treatment). Rather than exhibiting systemic deliberate indifference, the evidence shows Frakes is aware of and closely attuned to the intricate details associated with restrictive housing and is implementing improvements. *See* Filing 317 at 25-35 (detailing NDCS use of restrictive housing).

To counter evidence Defendants are not deliberately indifferent, Plaintiffs proclaim their expert, Craig Haney, "found that the conditions in NDCS restrictive housing units *cause* harm and a substantial risk of serious harm to the prisoners confined there." Filing 432 at 10 (emphasis added). But Haney admits he cannot quantify the alleged level of risk that those in restrictive housing face. Filing 352-6 at 191:8-23 ("You can't quantify it."); Filing 316-17 at 183:12-17 ("No way. I don't think anybody could quantify it."). And, to make matters worse, Haney is fundamentally not qualified to establish a causal connection between NDCS restrictive housing units and any harm or risk of harm to any specific inmates, including the named Plaintiffs. *See* Filing 378 at 11-14. Haney is not a licensed

10

clinical psychologist, cannot diagnose a patient, has never diagnosed a patient, has never provided treatment or therapy, and has never been the administrator of a mental health facility or worked as an employee in any prison environment. Filing 353 at 25-26. Haney's unqualified personal opinions regarding the conditions of confinement at NDCS simply "do not create constitutional standards under the Eighth Amendment." *Green v. Farrell,* 801 F.2d 765, 770 (5th Cir. 1986), *citing Rhodes v. Chapman,* 452 U.S. 337, 348, n. 13 (1981) (explaining that expert opinions regarding desirable prison conditions do not "suffice to establish contemporary standards of decency.").

The purported "consensus" relied on by Haney is based on conditions in other states and, more often than not, Haney circularly citing his own prior unqualified opinions. Filing 432 at 9-10 (Haney citing Haney; Haney citing *Williams v. Secretary of Pa. Dep't of Corrs.* citing Haney; Haney citing *Porter v. Clarke* citing Haney). As Defendants have shown, key components of Haney's methodology have not been tested for reliability, validity, or generalizability. Filing 353 at 28-29. There are no published results showing a reliable rate of error. *Id.* Haney does not account for preexisting conditions, determine an individual's prior baseline, use control groups or comparison groups, or rule out any other causes. *Id.* at 29-32. With inmates incentivized to malinger, Haney gives no consideration to whether the inmates may be malingering. *Id.* at 30. Haney chooses to disregard other factors and essentially determines that the mere presence of restrictive housing causes psychological harm. His opinion is based on a non-clinical, brief observation without context of prior

11

psychological history and without a basis for his opinions related to an individual's psychological health. The fact that Haney has used the same faulty methodology to reach the same conclusion on restrictive housing nationwide for decades, does not automatically render his opinions admissible under Rule 702 or *Daubert* or prove this subclass satisfies Rule 23.

None of Plaintiffs' evidence solves their commonality problem either. While Plaintiffs and their experts argue that restrictive housing could and should be better, those arguments do not establish that the conditions under which the *entire* subclass of inmates are housed are cruel and unusual. Haney admits he applied his flawed methodology to inmates that he selected as "particularly egregious instances, outrageous really instances" to be included in his declaration. Filing 352-6 at 71:10-18. And, as Haney acknowledges, outside of removing inmates from restrictive housing altogether, the answer for each inmate in restrictive housing "might very well involve a different kind of treatment modality for different kinds of symptoms that are being manifested or exacerbated." Filing 316-17 at 54:5-21. Haney also agrees that an individualized analysis should be used when assessing whether or not a prisoner should be in restrictive housing. Filing 316-17 at 199:18-22. So does Eldon Vail. Filing 316-12 at 167:8-11 (Q: "Is it your opinion that when assessing whether a prisoner has been harmed by restrictive housing in any way, that it should be an individual analysis?" Vail: "Person by person, you bet."). That is because risk of harm can vary based on a number of factors. Filing 316-17 at 200:10-17.

In sum, Plaintiffs cite to outdated and out-of-state data, and their experts are neither qualified to establish a causal connection nor able to quantify any level of risk. Their anecdotal evidence does not show that inmates in restrictive housing, as a class, are systematically being denied access to life's necessities or that any of the Defendants knew of and disregarded a substantial risk of serious harm to them.

### iii. ADA and Rehabilitation Act.

The "ADA and RA require that otherwise qualified individuals receive 'meaningful access' to programs and activities." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). "A plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Id*. These requirements necessarily consider the material differences in individuals.

First, the decentralized decision making on ADA accommodations at NDCS "is just the opposite of a uniform . . . practice that would provide the commonality needed for a class action." *Dukes*, 564 U.S. at 354. ("Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*"); Filing 392 at 3-5. Plaintiffs have not shown Defendants have a policy or system-wide practice of not providing modifications, accommodations, or auxiliary aids.

Second, whether one official's determination that access was meaningful, or a modification was reasonable for a particular inmate with a particular disability, and

13

whether that decision was incorrect, would be highly fact specific. Filing 392 at 5-8; *see Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1085-86 (11th Cir. 2007) ("The reasonable-modification inquiry in Title II–ADA cases is 'a highly fact-specific inquiry.' . . . What is reasonable must be decided case-by-case based on numerous factors."). According to Plaintiffs' expert Margo Schlanger, "there's no question that what auxiliary aids are appropriate and what reasonable modifications are appropriate should have to depend on the needs of the prisoner." Filing 391-2 at 51:11-22; Filing 316-15 at 109:14-110:14 (Schlanger stating that what inmates with disabilities need "on the ground will vary across disability and across the need, and depending on what program they need access to." And "that people with different disabilities have different needs for accommodations or modifications.").

Finally, the "common questions" offered by Plaintiffs will not "drive the resolution of the litigation" or "resolve an issue that is central to the validity of each one of the [member's] claims in one stroke." *Dukes,* 564 U.S. at 350. For example, when asked if resolving the tracking issue would resolve any of the named Plaintiffs' ADA claims, Schlanger responded that "[t]racking is a piece of the system. It doesn't itself solve anything." Filing 391-2 at 171:3-6.

### b. **No Plaintiff could typify members of such sprawling classes.**

To establish typicality, a plaintiff must "possess the same interest and suffer the same injury as the class members." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-57 (1982). Plaintiffs claim they have done so because their claims arise from the same "centralized policies and practices." Filing 432 at 15-16. But "the presence

14

of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M.*, 458 F.3d at 787. As explained above, each Plaintiff presents medically diverse conditions, contraindications and statuses. Each of their claims require individualized evidence. *See* Filing 324 at 30 (opposing summary judgment with individualized analysis and evidence of claim because of the "fact-intensive nature of the inquiries in prison medical care cases."). Plaintiffs' experts agree. Filing 317 at 76-78, *citing* Haney Dep. Filing 316-17 at 199:23-200:4 ("In assessing whether or not they've been harmed or the degree to which they've been harmed, obviously it has to be an individual analysis in any individual case."). Plaintiffs' claims therefore are not "typical" of all inmates in the custody of NDCS.

### c. Inadequate Plaintiffs.

Plaintiffs have not proven they will fairly and adequately represent the interests of the class under Rule 23(a)(4). "Seeking to represent a large group of people as a class representative is a very heavy responsibility . . . and the court should allow such representation only upon a firm foundation that the named plaintiffs are willing and able to shoulder that burden." *Clayborne v. Omaha Public Power Dist.*, 211 F.R.D. 573, 597 (D. Neb. 2002) (citations omitted); *see Bishop v. Committee on Professional Ethics & Conduct of Ia. State Bar Ass'n*, 686 F.2d 1278, 1288 (8th Cir. 1982) ("The adequacy of the representation issue is now of critical importance in all class actions and the court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite in every case.").

Plaintiffs again limit their analysis to whether there are conflicts between the named parties and the class they seek to represent. Filing 432 at 16-17. But that is not the only factor. Filing 317 at 79. Plaintiffs lack credibility. *Id.* at 80-89; Filing 391-4 (Gunther ADA investigation). Plaintiffs have insufficient basic knowledge about the case, do not understand their role as a class representative, and have not actively participated in prosecuting the litigation. Filing 317 at 90-96; *see Saylor v. Lindsley,* 456 F.2d 896, 900 (2d Cir. 1972) (The class is entitled to a representative who is more than "a key to the courthouse door dispensable once entry has been effected."). And Plaintiffs have failed to prove their own standing. Filing 317 at 96-99; *Lewis*, 518 U.S. at 357 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quotations and citation omitted).

### d. Failure to prove numerosity.

Rather than establish numerosity, Plaintiffs simply declare their classes are sufficiently numerous solely by combining desired policy changes with anecdotal evidence from individual inmates, and extrapolating it to blanket estimates of all inmates in NDCS custody. Filing 250 at 37. But those estimates fail to establish even a reasonable approximation of how many inmates actually have standing to bring these Eighth Amendment or ADA claims. *See* Filing 317 at 99-100. A finding of numerosity "requires examination of the specific facts of each case." *Applied*

16

*Underwriters, Inc. v. Top's Pers., Inc.*, 2019 WL 2061453 at *5 (D. Neb. 2019), *quoting General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980).

As one example, Plaintiffs assert the entire NDCS class is at substantial risk of serious harm because they believe NDCS policies inadequately prevent suicide. Filing 432 at 6. Even looking past the difficulty in determining what is "adequate" suicide prevention when comparing suicidal inmates to non-suicidal inmates, and whether or not the risk is substantial for each of those inmates, what evidence have Plaintiffs submitted to show that the class of inmates alleged to be at substantial risk is sufficiently numerous? The suicide rate noted by Dr. Stewart equates to roughly one suicide per year at NDCS. Filing 249-38 at 35. Not all inmates are suicidal, and Plaintiffs have not proven that joinder of however many inmates are at substantial risk of serious harm because of NDCS suicide prevention policies is impracticable.

Although not every member must "submit evidence of personal standing," *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013), "a class cannot be certified if it contains members who lack standing." *Id*. (citation omitted). And "standing is not dispensed in gross. If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review." *Lewis*, 518 U.S. at 358, n. 6.

Based on the minimal factual information Plaintiffs have provided to the Court, Plaintiffs failed to satisfy their burden of demonstrating that the proposed

17

class and/or subclasses of inmates with standing to bring these Eighth Amendment or ADA claims are sufficiently numerous to satisfy Rule 23(a)(1).

### III. Expert opinions in opposition to class certification.

In various footnotes throughout their supplemental brief, Plaintiffs attack the credibility of Defendants' experts and generally fault those experts for relying on their extensive experience in their respective fields instead of performing past work in "institutional reform" litigation. *See, e.g.,* Filing 432 at 7, n. 9 (arguing Dr. Rich's forty years of dental practice in Nebraska and service as clinical instructor at the University of Nebraska College of Dentistry cannot be credited when considering community standard of care because Rich lacks "experience with correctional dental care"); *id.* at 6, n. 7 (asserting Dr. Davis lacks "relevant correctional expertise" as a mental health expert even though Davis spent 6 years as the Medical Director and Staff Psychiatrist at Douglas County Mental Health Center and has evaluated and treated an estimated 10,000 or more patients); *id.* at 10, n. 13 (claiming it is significant that Dr. Stoner does not regularly testify in "institutional reform" cases). As explained in Filing 372 at 3-20, Plaintiffs misunderstand the purpose for which the testimony of Defendants' experts was offered (provide background to the Court and identify flaws in the methodology, factual basis, and assumptions of Plaintiffs' experts), disregard the fact it is their burden to prove they have satisfied Rule 23, and each of their arguments critiquing Defendants' experts lacks merit.

## Conclusion

For the foregoing reasons, and those identified in Filing 317, Filing 344-1, Filing 372, and Filing 392, class certification should be denied.

Submitted January 8, 2020.

       **NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, SCOTT FRAKES, HARBANS DEOL, NEBRASKA BOARD OF PAROLE, and JULIE MICEK, Defendants.**

By:   DOUGLAS J. PETERSON
       *Attorney General of Nebraska*

By:   *s/Ryan S. Post*
       RYAN S. POST, #24714
       DANIELLE L. ROWLEY, #25505
       KATHERINE O'BRIEN, #25993
       BEN GOINS, #26034
       SCOTT R. STRAUS, #26475
       PHOEBE L. GYDESEN, #26333
       *Assistant Attorneys General*

       OFFICE OF THE ATTORNEY GENERAL
       2115 State Capitol
       Lincoln, Nebraska 68509
       (402) 471-2682
       ryan.post@nebraska.gov

       <u>Attorneys for the Defendants.</u>

**CERTIFICATE OF COMPLIANCE**

Pursuant to NECivR 7.1(d), and the Court's order at Filing 423, I certify that this brief contains 4,986 words as counted by the Microsoft Word 2016 word processing software used to generate the brief. The word count function of this software was applied to include all text, including the caption, headings, footnotes, and quotations. This brief is 20 pages in length, double-spaced, with one-inch margins, and 12-point Century Schoolbook font.

By: *s/Ryan S. Post*
Ryan S. Post

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2020, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, causing notice of such filing to be served upon all parties registered on the CM/ECF system.

By: *s/Ryan S. Post*
Ryan S. Post